# CHARLESTON.

THE STAR PIANO COMPANY v. BROCKMEYER.

Submitted October 3, 1916.   Decided October 10, 1916:

1. APPEAL AND ERROR—*Review—Discretion of Trial Court—Grant of New Trial.*

    It takes a stronger case in an appellate court to reverse a judgment awarding a new trial than one denying it and giving judgment against the party claiming to have been aggrieved. (p. 783).

2. PRINCIPAL AND AGENT—*Rights and Liabilities of Third Persons— Unauthorized Acts—Ratification.*

    Where an agent authorized to sell goods for his principal on particular terms, violates those terms, and makes sale thereof on

different terms, and the principal with full knowledge of the facts and circumstances of the sale, afterwards elects to accept from the agent or his representatives notes and securities for the purchase money, he will be deemed to have ratified the unauthorized act of the agent and be bound by his contract.   (p. 784).

Error to Circuit Court, Cabell County.

Action by the Star Piano Company against A. Brockmeyer. Judgment for defendant and plaintiff brings error.

*Affirmed.*

*Daugherty & Riggs,* for plaintiff in error.

*Williams, Scott & Lovett,* for defendant in error.

MILLER, JUDGE:

This action, begun before a justice, purporting to be "for the recovery of money due on contract", and tried upon an appeal by the defendant in the circuit court, resulted in a verdict for plaintiff for two hundred and forty five dollars, which the court, upon defendant's motion, set aside and awarded him a new trial.   From that judgment the plaintiff obtained the present writ of error.

The cause of action was the price of one piano sold to defendant by plaintiff's agent, Wright, at Gallipolis, Ohio, in 1914, and the claim of plaintiff is that defendant failed to pay for the piano, and remains liable to it on his contract therefor.   The material facts and circumstances relied on, and not controverted are, that Wright, the agent of the plaintiff, was also the agent of the Singer Sewing Machine Company, and had been the latter's agent for about twenty five years.   The defendant was supervisor of agencies of the Singer Sewing Machine Company, located at Huntington, this state, with jurisdiction over the territory in Ohio occupied by Wright.   At the time of his purchase of the piano from Wright, agent for plaintiff, he and his assistant Conley were at Wright's place of business in Gallipolis, for the purpose of receiving his report of sales and collections, as agent of the Singer Sewing Machine Company, for the current settlement period.   Wright's report showed an unusually good business, and his collections for which he was about to

settle amounted to something over three hundred dollars. And then it was that Wright renewed his request to Brockmeyer to buy a piano. Brockmeyer then selected a piano, and Wright promptly transmitted an order to plaintiff for a piano like the one selected, to be shipped to Brockmeyer at Huntington from the plaintiff's factory in Indiana, the price agreed upon being two hundred and forty dollars. Brockmeyer then proposed to pay Wright for the piano, by his check on a Huntington bank, but instead Wright directed him to make the check payable directly to the Singer Sewing Machine Company, and turn it over to Conley on his account due the Singer Sewing Machine Company, and he would give Conley his check also for the balance due on his account, which was done and the settlement made in that way, Brockmeyer taking Wright's receipt as agent for the piano company, for the full price of the piano. Brockmeyer's check was paid in due course and the same amount passed to the credit of Wright as agent.

There was some delay in the shipment of the piano ordered to Brockmeyer; and later Wright, assisted by Purnell, general agent, for the piano company, shipped the piano in stock at Wright's place of business to Brockmeyer, and it was received by him at Huntington. Presumably Purnell and his company were fully advised at the time of the character of the transaction between Wright and Brockmeyer; at least no denial of this fact is made by them.

Some time after the transaction, Wright unexpectedly died, and upon his death settlement was made by his widow, later appointed administratrix, with the piano company for the balance found due, including the price of the piano sold Brockmeyer, the company taking her note therefor for six hundred and forty five dollars. Later and after Mrs. Wright was appointed administratrix, a final settlement was effected through her attorney, upon the terms of the surrender to her of said note, acceptation from her of a check for one hundred and sixty one dollars and release to the piano company of all commissions that might accrue to Wright's estate on pianos sold by him in his life time. What these amounted to the record does not disclose. Purnell claims that some

time between the taking of Mrs. Wright's note, and the final settlement referred to he notified Brockmeyer that the piano shipped him had not been paid for and that he would be looked to for payment; and shortly afterwards this suit was brought.

It is suggested, but not proven, that the transaction between Wright, Brockmeyer, and Conley, was fraudulent and done to secure to the Singer Sewing Machine Company payment of a balance or shortage due from Wright; but there seems to have been no effort to conceal the transaction from the piano company or its agents; they seem to have been fully informed about it and by their acts and conduct to have ratified the contract. It is conceded that Wright had full authority to sell pianos and collect the purchase money, and that the manner of conducting the business for both companies was to periodically remit for the collections made, and not at the time of each collection. For aught that appears Wright would have paid the sewing machine company the full amount of his account in cash or by check if he had not sold the piano to Brockmeyer. If he had taken Brockmeyer's check for the piano, and given his check to the sewing machine company for the full amount of his account, the transaction could not have been much different, and in that event who would say that Wright exceeded his authority to sell for cash or upon time payments? Of course if fraud had entered into the contract the result might be different. Wright presumably had money on hand to settle with the sewing machine company, arising from collections made for it, for the then current period; and for aught that appears he may have used that money to pay on his account with plaintiff. It appears that at the time of the sale to Brockmeyer he owed the plaintiff not to exceed fifty dollars, and it was not then known that he was indebted to the sewing machine company otherwise than for the balance shown by his current report.

At this juncture it is proper to take note of our decisions saying that it takes a stronger case in an appellate court to reverse a judgment awarding a new trial, than one denying it and giving final judgment against the party claiming to have been aggrieved. *Varney & Evans* v. *Hutchinson Lum.*

*& Mfg. Co.*, 64 W. Va. 417, 63 S. E. 203; *Willson* v. *Ice*, 90 S. E. 272, decided at the present term, and not yet officially reported.

The proposition mainly relied on by plaintiff in error is that Wright, agent, being without authority to sell, except for cash or on time contracts, reserving title, of which defendant was bound to take notice, the verdict was right and that judgment thereon should have been pronounced in its favor. The general proposition respecting dealings with an agent is not controverted. In this case the sale was for cash; the only matter of controversy is that it was improperly applied, or that it took the form of payment not directly to Wright, but to the sewing machine company, on his account. But assuming want of authority in Wright, as agent, did not the plaintiff afterwards and with full knowledge of all the facts ratify the contract as made? By demanding of Brockmeyer payment and the bringing of this suit it elected to take advantage of the sale to him, and pro tanto this was ratification of Wright's contract. And after the contract, and before suit, plaintiff elected to make settlement first with Mrs. Wright by taking her note for the full amount of her husband's liability, and then surrendered this note to her upon the terms already stated. It seems to be well settled by the authorities that if a principal denies the authority of his agent he must revoke his contract in toto; that he cannot ratify it in part and repudiate it in part; and that if he afterwards, with full knowledge of the facts, accepts notes or securities from the agent in settlement this will amount to a ratification of the agent's acts and bind him to the contract as made. 1 Clark & Skyles on Agency, section 140, (a) and (b), and cases cited; Tiffany on Agency, pp. 65-68, and cases cited. Cases illustrating the application of the principle of ratification to a case like the one at bar are cited in note 35, page 68, of the text writer last cited. See *D. M. Osborn & Co.* v. *Jordan*, (Neb.) 72 N. W. 479; *Shoninger* v. *Peabody*, (Conn.) 14 Am. St. Rep. 88; *Curnane* v. *Scheidel*, (Conn.) 38 Atl. 875.

For the foregoing reasons we find no reversible error in the judgment and are of opinion to affirm it.          *Affirmed.*