558 S.E.2d 598

**Adaline STILLWELL, et al., Plaintiffs Below, Appellees,**

v.

**The CITY OF WHEELING, et al., Defendants Below,**

**Colaianni Construction, Inc., a West Virginia Corporation, Defendant Below, Appellant.**

No. 28663.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2001.

Decided Oct. 26, 2001.

Dissenting Opinion of Chief Justice McGraw Jan. 11, 2002.

Richard C. Polley, Dickie, McCamey & Chilcote, L.C., Wheeling, George N. Stewart, Dara A. DeCourcy, Zimmer Kunz, P.L.L.C., Pittsburgh, PA, for the Appellant.

James G. Bordas, Jr., James B. Stoneking, Bordas, Bordas & Jividen, Wheeling, for the Appellees.

DAVIS, Justice.

Colaianni Construction, Inc., appeals from an order of the Circuit Court of Ohio County granting a new trial in this wrongful death/personal injury action. Colaianni Construction had been sued on a theory of vicarious liability arising from the alleged negligence of an independent contractor against whom a default judgment was ultimately entered. In granting a new trial, the circuit court reasoned that, because the negligence of the independent contractor had been determined by virtue of the default judgment, it had erred by allowing the jury to decide that question. Consequently, the circuit court ruled that in the new trial Colaianni would be precluded from litigating the issue of the independent contractor's negligence. We conclude that a default judgment is not a proper foundation for the application of offensive collateral estoppel. Therefore, the question of the independent contractor's negligence was properly before the jury. For this reason, we reverse this case and remand for entry of an order reinstating the jury verdict.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On March 10, 1989, the City of Wheeling entered into a contract with Colaianni Construction, Inc. (hereinafter "Colaianni"), a defendant below and the appellant herein, for construction of the Veteran's Memorial Amphitheater.[1] Pursuant to the contract, the amphitheater was constructed along the bank of the Ohio River in Wheeling and included a public dock. A series of banner flag poles, each of which included a light to illuminate its flag, were installed at the end of the dock. In addition, navigation lights were installed on the northernmost and southernmost flag poles. Colaianni subcontracted the electrical work required on the project to Young Electric, Inc. (hereinafter "Young"). Included in the electrical work was the job of running electrical service to the lights in the dock area, where occasional flooding was anticipated. To complete this task, Young used metal conduit and ran it under the dock.

In approximately 1990 or 1991, the City of Wheeling removed the lights from the banner flag poles; however, electrical service to the dock area was left intact. At some point, the navigation lights were also removed. Again, electrical service to the dock area remained intact.

Thereafter, the dock area was flooded in 1996. As a result of the flood, the electrical/breaker room from which electrical service to the dock area was provided sustained damage. The City hired Yahn Electric, Inc.

---

**1.** Colaianni had been awarded the contract after the project had been put out for competitive bids. The project had been designed and the plans and specifications had been prepared by McKinley & Associates, Inc.

to perform repair work. Yahn Electric replaced all the breakers in the electrical/breaker room, including those that powered the lines to the flag poles in the dock area. Apparently, there was no inspection of the conduit below the dock that carried the electrical lines to the flag poles.

It was later learned that this conduit had deteriorated and dislodged, and had come to rest on the river bed. As a result of this damage, several live wires were exposed in the water of the Ohio River. On August 2, 1997, prior to the discovery of this damage and the exposed wires, Adaline Stillwell, a plaintiff below and an appellee herein, and her fourteen-year-old daughter, Susan, were tubing on the Ohio River in the vicinity of the amphitheater, a public area commonly used for such recreational activities. As Adaline Stillwell approached the dock she began to feel tingling and numbness in her legs and needed assistance to exit the water. In the meantime, Susan also reached the dock area. Before Susan was able to get out of the water, however, she came into contact with the exposed electrical wires that were energizing the water and was electrocuted. Efforts to resuscitate her were unsuccessful and she was later pronounced dead at Wheeling Hospital.

Adaline Stillwell, as administrator of the estate of the deceased, and in her own right, filed a wrongful death and personal injury suit in the Circuit Court of Ohio County. The defendants named in the suit included the City of Wheeling; McKinley & Associates, Inc., f/k/a McKinley Engineering Company; Colaianni Construction, Inc.; and Young Electric, Inc.[2] Susan's father, Alvin Stillwell,[3] also filed a wrongful death suit in the Circuit Court of Ohio County in his capacity as the administrator of Susan's estate.[4] Alvin Stillwell's suit was asserted against the same defendants named in Adaline Stillwell's suit. Colaianni filed a motion to dismiss as duplicative the action filed by Alvin Stillwell. The circuit court then made Adaline and Alvin Stillwell (hereinafter "the Stillwells") co-administrators of Susan's estate and directed a single trial.[5] Yahn Electric, Inc., was added to the suit as a third-party defendant.

Young did not file an answer or otherwise appear in this action.[6] Due to Young's failure to respond, the Stillwells moved for a default judgment under Rule 55 of the West Virginia Rules of Civil Procedure. The motion was granted over Colaianni's objection. In addition to obtaining a default judgment against Young, the Plaintiffs negotiated settlements with the City of Wheeling, McKinley & Associates, Inc., and Yahn Electric. The circuit court approved the settlements, also over Colaianni's objections.

A jury trial was then had with Colaianni as the only remaining defendant. After hearing the evidence presented, the jury returned a verdict finding that neither Young nor Colaianni had been negligent in installing the electrical system at the amphitheater. In addition, however, the jury concluded that Young's work in this regard was inherently dangerous.[7]

Following the return of the jury verdict, the Stillwells filed a motion for a new trial claiming, in part, that the circuit court should have entered judgment against Colaianni as a matter of law following the default by its subcontractor, Young. The circuit court then set aside the verdict and granted the Stillwells a new trial. In its order granting a new trial, the circuit court explained:

> Based upon [the jury's finding that the work being performed by Young Electric

**2.** This suit was designated Civil Action No. 97–C–324.

**3.** Alvin and Adaline Stillwell are divorced.

**4.** This suit was designated Civil Action No. 97–C–328.

**5.** The consolidated suit was designated Consolidated Civil Action No. 97–C–324.

**6.** Young had been involuntarily dissolved by decree of court on April 15, 1994. In this appeal, the parties have raised issues involving the effectiveness of the dissolution and whether Young received proper service of process. Our resolution of this case, however, does not require us to decide these issues.

**7.** On appeal, Colaianni has also raised an issue related to this finding. As we resolve this case on other grounds, we do not reach the issue.

was inherently dangerous], the negligence of the defendant, Young Electric Company, Inc., as subcontractor, was imputed to the defendant, Colaianni Construction, Inc., as general contractor, under the principles set forth in *King v. Lens Creek Limited Partnership*, 199 W.Va. 136, 483 S.E.2d 265 (1996).

The circuit court then concluded that it had erred in submitting to the jury the issue of Young's negligence. Allowing the verdict to stand, the court reasoned, would result in a miscarriage of justice. Consequently, the circuit court ordered a new trial and directed that the issues to be addressed would be only: (1) Colaianni's negligence, (2) the inherent dangerousness of Young Electric's work, and (3) damages. It is this order that Colaianni now appeals.[8]

## II.

## STANDARD OF REVIEW

■ In this appeal we are asked to consider a circuit court's ruling on a motion for a new trial. It is well established that:

"A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." Syl. Pt. 3, in part, *In re State Public Bldg. Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied sub nom. W.R. Grace & Co. v. West Virginia*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

Syl. pt. 2, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). Elaborating on this point, we have held:

When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure*, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence,

and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

Syl. pt. 3, in part, *In re State Pub. Bldg. Asbestos Litig.*, 193 W.Va. 119, 454 S.E.2d 413 (1994). Typically,

" '[i]t takes a stronger case in an appellate court to reverse a judgment awarding a new trial than one denying it and giving judgment against the party claiming to have been aggrieved.' Point 1, Syllabus, *The Star Piano Co. v. Brockmeyer*, 78 W.Va. 780[, 90 S.E. 338 (1916) ]." Syl. pt. 2, *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968).

Syl. pt. 1, *id.* See also Syl. pt. 4, *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968) ("An appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new trial than when such action results in a final judgment denying a new trial."), *overruled on other grounds by Tennant v. Marion Health Care Found.*, 194 W.Va. 97, 459 S.E.2d 374 (1995). This does not mean, however, that an order granting a new trial is never reversed. We have previously explained that " 'the judgment of a trial court in awarding a new trial should be reversed ... if a consideration of the evidence shows that the case was a proper one for jury determination.' " *Andrews v. Reynolds Mem'l Hosp., Inc.*, 201 W.Va. 624, 630, 499 S.E.2d 846, 852 (1997) (quoting *Maynard v. Adkins*, 193 W.Va. 456, 459, 457 S.E.2d 133, 136 (1995)). Thus,

"[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence."

*Andrews*, 201 W.Va. at 630, 499 S.E.2d at 852 (quoting Syl. pt. 4, *Sanders v. Georgia–Pac. Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976) (additional citations omitted)).

---

**8.** The Stillwell's filed a motion to dismiss this appeal claiming the lack of an appealable order. The motion was denied.

Our determination of whether the circuit court abused its discretion in the case *sub judice* requires us to decide the issue of whether a general contractor being sued on a theory of vicarious liability is barred from litigating the issue of an independent contractor's negligence where a default judgment has been entered against the independent contractor. To the extent that this raises a question of law, our review of the circuit court's determination of this particular issue is *de novo*. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Having reviewed the proper standards for our consideration of this case, we now address the issue at hand.

## III.

## DISCUSSION

In this case, the Stillwells seek to establish liability on the part of Colaianni for work performed by Young while Young was acting as an independent contractor. It has been clearly established that, in general, one may not be held liable for the negligence of an independent contractor.[9]

"The general rule is that where one person has contracted with a competent person to do work, not in itself unlawful or intrinsically dangerous in character, and who exercise no supervision or control over the work contracted for, such person is not liable for the negligence of such independent contractor or his servants in the performance of the work." Syl. Pt. 1, *Chenoweth v. Settle Eng'rs, Inc.*, 151 W.Va. 830, 156 S.E.2d 297 (1967), *overruled in part on other grounds by Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

Syl. pt. 7, *Thomson v. McGinnis*, 195 W.Va. 465, 465 S.E.2d 922 (1995). An exception to this general rule applies where the work performed by the independent contractor is inherently dangerous. "A principal has a non-delegable duty to exercise reasonable care when performing an inherently dangerous activity; a duty that the principal cannot discharge by hiring an independent contractor to undertake the activity." Syl. pt 2, *King v. Lens Creek Ltd. P'ship*, 199 W.Va. 136, 483 S.E.2d 265 (1996). Thus, to hold one vicariously liable for negligence on the part of an independent contractor in carrying out an inherently dangerous activity, it must be shown not only that the independent contractor was engaged in an inherently dangerous activity, but also that the independent contractor acted negligently. As we discuss more fully below, the fact that Young was negligent in carrying out the activities underlying this law suit has been determined by virtue of a default judgment entered against it as a result of its failure to answer or otherwise defend the Stillwells' suit. The question we must decide is whether that default judgment also satisfies the negligence arm of the test for vicarious liability, hence operating to collaterally estop Colaianni from litigating the issue of Young's negligence.

The doctrine of collateral estoppel applies to preclude the litigation of an *issue* that has been previously resolved. *See Christian v. Sizemore*, 185 W.Va. 409, 412, 407 S.E.2d 715, 718 (1991) ("Collateral estoppel is essentially a doctrine which precludes the relitigation of an *issue*, while res judicata precludes relitigation of the same cause of action." (emphasis added)). The circuit court's decision to award a new trial in which Colaianni would be precluded from litigating the issue of Young's negligence is an application of offensive collateral estoppel. *Conley v. Spillers*, 171 W.Va. 584, 591, 301 S.E.2d 216, 222 (1983) ("Where a plaintiff presses for collateral estoppel, it is said to be 'offensive' on the theory that the plaintiff is using the estoppel as an affirmative device to avoid having to prove liability against the defendant."). We have explained:

Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the

---

**9.** In this case, there is no dispute among the parties that Young was an independent contractor of Colaianni.

earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:

"But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res adjudicata.*" *Lane v. Williams,* 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965).

Syl. pt. 2, *Conley.*[10]

In discussing the requisites for the application of collateral estoppel, we have further stated:

"The doctrine of collateral estoppel also requires as does *res judicata* that the first judgment be rendered on the merits and be a final judgment by a court having competent jurisdiction over the subject matter and the parties." Syl. Pt. 3, *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983).

Syl. pt. 2, *Christian.* There is no question that a default judgment is equivalent to a final judgment on the merits. *See Blake v. Charleston Area Med. Ctr., Inc.,* 201 W.Va. 469, 478, 498 S.E.2d 41, 50 (1997) (concluding that "the default ruling in the initial case between CAMC and the Blakes satisfies the criteria for a final adjudication on the merits by a court of competent jurisdiction." (citations omitted)); Syl. pt. 1, in part, *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970) ("A default judgment obtained in accordance with the provisions of Rule 55(b), West Virginia Rules of Civil Procedure, is a valid and enforceable judgment ....."); 11A Michie's Jurisprudence *Judgments and Decrees* § 200 (1997) ("A default judgment is final and enforceable unless set

aside in accordance with the prescribed rules of procedure."). However, a final judgment on the merits is not, in and of itself, adequate to support the application of collateral estoppel.

In addition to the requirement of a final judgment on the merits, we have held that " '[a] fundamental due process point relating to the utilization of collateral estoppel is that any person against whom collateral estoppel is asserted *must have had a prior opportunity to have litigated his claim.*' Syl. Pt. 8, *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983)." Syl. pt. 3, *Christian* (emphasis added). In the instant case, Colaianni did not have an opportunity to litigate the issue of Young's negligence prior to the entry of the default judgment.[11] Yet that question is crucial to finding Colaianni liable. Under these circumstances, we find it is not proper to apply collateral estoppel to preclude Colaianni from litigating the issue of Young's negligence. General principles related to default judgments further support this conclusion.

A default judgment is a sanction that may be imposed against a party for his or her failure to comply with certain procedural requirements associated with a lawsuit. *See* 11A Michie's Jurisprudence *Judgments and Decrees* § 186, at 281 (explaining that a default judgment is based "upon an omission to take a necessary step in [an] action within the proper time." (footnote omitted)). *See, e.g., Napier v. Plymale,* 167 W.Va. 372, 280 S.E.2d 122 (1981) (indicating that default judgment was appropriate sanction for unjustified delay in filing answer); *Bennett v. General Acc. Fire & Life Assur. Corp.,* 149 W.Va. 92, 138 S.E.2d 719 (1964) (concluding that default judgment was proper against defendant who failed to appear either in person or by counsel on day of trial). It is punitive in nature and meant to deter such conduct. However, a person or entity hiring

---

**10.** While, technically, there has been no filing of separate law suits in the case *sub judice,* for all practical purposes the claims against Colaianni and Young are the equivalent of two separate law suits. Consequently, it is appropriate to examine the issue herein raised in the context of collateral estoppel.

**11.** Young, on the other hand, did have the opportunity to litigate the issue of its own negligence and failed to do so, resulting in the entry of the default judgment against it.

an independent contractor has absolutely no power to prevent the independent contractor's procedural default in any subsequent law suit that may arise from the contracted work. Consequently, penalizing such an individual for the defaulting conduct of the independent contractor would have absolutely no deterrent effect.

Moreover, it is well established that default judgments are not favored in the law. Indeed, as we stated in *Intercity Realty Co.* " '[t]he law strongly favors an opportunity to a defendant to make defense to an action against him.' " 154 W.Va. at 376, 175 S.E.2d at 456 (quoting *Plumley v. May,* 140 W.Va. 889, 893, 87 S.E.2d 282, 285 (1955)). *See also Daniels v. Hall's Motor Transit Co.,* 157 W.Va. 863, 865–66, 205 S.E.2d 412, 413 (1974) ("This Court has held that it is the policy of the law to favor the trial of all cases on the merits, *McDaniel v. Romano,* 155 W.Va. 875, 190 S.E.2d 8 (1972)."); 11A Michie's Jurisprudence *Judgments and Decrees* § 186, at 282 ("Default judgments are not favored in law; courts exist to do justice and are reluctant to enforce an unjust judgment." (footnote omitted)). Applying collateral estoppel to prevent one party from mounting a defense when the estoppel is based solely upon another party's procedural default runs afoul of these principles. For these reasons, we hold that where a party is sued on a theory of vicarious liability arising from the negligence of an independent contractor, that party is entitled to defend on the basis that the independent contractor was not negligent, notwithstanding the entry of a default judgment against the independent contractor. However, the default judgment against the independent contractor remains in full force and effect regardless of the outcome of the litigation on the issue of his or her negligence.

We note that other courts addressing similar issues have likewise concluded that a default judgment is not a proper foundation for vicarious liability. *See Dade County v. Lambert,* 334 So.2d 844, 847 (Fla.Dist.Ct. App.1976) (finding that county could not be held vicariously liable based on its employee bus driver's failure to plead, and stating "[t]he default of one defendant, although an admission by him of the allegations of the complaint, does not operate as an admission of such allegation as against a contesting co-defendant." (citations omitted)); *United Salt Corp. v. McKee,* 96 N.M. 65, 68, 628 P.2d 310, 313 (1981) (refusing to set aside default judgment entered against employees to the extent that it established the liability of the employees,[12] but stating that the employer would nevertheless be "entitled to try the issues of *negligence,* respondeat superior and the amount of damages. As long as these issues were raised by [the employer's] pleadings, it should not be foreclosed from litigating them merely because [the employees] defaulted." (emphasis added)).[13]

Based upon the foregoing analysis, we find that the circuit court abused its discretion in granting a new trial founded upon its erroneous conclusion that it had erred in submitting the question of Young's negligence to the jury. The jury properly considered the question and found that Young did not act negligently. As a consequence, Colaianni may not be held liable for Young's actions.

## IV.

## CONCLUSION

For the reasons stated in this opinion, we reverse the circuit court's order granting a new trial, and we remand this case for entry

---

**12.** The *United Salt* court did, however, set aside the default judgment to the extent it awarded damages. Because there was no independent cause of action against the employer, the court was concerned that inconsistent verdicts would result if the damage award was permitted to stand.

**13.** *But see Rogers v. J.B. Hunt Transp., Inc.,* 244 Mich.App. 600, 624 N.W.2d 532 (2001) (finding employer being sued on theory of vicarious liability could not contest employee's liability following default judgment against employee); *Ha v. T.W. Smith Corp.,* 185 Misc.2d 895, 896, 714 N.Y.S.2d 873, 874 (2000) (concluding that "liability can be statutorily imposed upon the [employer/]owner of a vehicle where the [employer/]owner has appeared and contested liability and a default judgment has been granted against the [employee/]driver," but noting that the employer could have filed an answer on behalf of its employee).

of an order reinstating the verdict of the jury.

Reversed and Remanded.

Chief Justice McGRAW dissents and files a dissenting opinion.

McGRAW, Chief Justice, dissenting.

(Filed Jan. 11, 2002)

In this case the veteran trial judge found that the jury's verdict could not be supported by the evidence in the case and made a decision to grant the plaintiff a new trial. As the majority indicates, we review such a decision only for an abuse of discretion, and we look more favorably upon orders granting new trials than those denying the same.

" 'It takes a stronger case in an appellate court to reverse a judgment awarding a new trial than one denying it and giving judgment against the party claiming to have been aggrieved.' Point 1, Syllabus, *The Star Piano Co. v. Brockmeyer*, 78 W.Va. 780 [, 90 S.E. 338 (1916) ]." Syl. pt. 2, *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968).

"An appellate court is more disposed to affirm the action of a trial court in setting aside a verdict and granting a new trial than when such action results in a final judgment denying a new trial." Syl. pt. 4, *Young v. Duffield*, 152 W.Va. 283, 162 S.E.2d 285 (1968).

Syl. pts. 1, 2, *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied, W.R. Grace & Co. v. West Virginia*, 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995). I simply do not feel that the appellants' case was strong enough to merit the reversal of the trial court. I would have permitted the lower court to proceed with the new trial in this case. Therefore I must respectfully dissent.