649 S.E.2d 272

**Eric Jason BROOKS, Plaintiff Below, Appellant**

v.

**GALEN OF WEST VIRGINIA, INC., D/B/A Greenbrier Valley Medical Center and Greenbrier Valley Medical Center, LLC, D/B/A Greenbrier Valley Medical Center, Defendants Below, Appellees.**

**No. 33207.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 28, 2007.

Decided April 19, 2007.

Richard E. Hardison, Jr., Beckley, for the Appellant.

William F. Foster, II, The Foster Law Firm, PLLC, Charleston, for the Appellees.

**PER CURIAM:**

This is an appeal by Eric Jason Brooks (hereinafter "Appellant") from a jury verdict in the Circuit Court of Greenbrier County in favor of Galen of West Virginia, d/b/a Greenbrier Valley Medical Center (hereinafter "GVMC" or "Appellee"). The Appellant contends that the lower court erred by taking judicial notice of a Social Security disability hearing which found the Appellant disabled due to a somatoform disorder and in excluding the Appellant's allegations of deviations from the standard of care by GVMC emergency room physicians. Subsequent to thorough review of the briefs, record, arguments, and applicable precedent, this Court affirms the findings of the lower court.

## I. Factual and Procedural History

On February 21, 2000, the Appellant arrived at GVMC complaining of acute abdominal pain. The Appellant was admitted to the hospital to rule out an appendicitis. Intravenous (hereinafter "IV") fluids and medications were administered through the Appellant's left hand during his hospitalization. On February 23, 2000, the Appellant was discharged. He returned to the emergency room of GVMC several hours later with swelling and pain in his left hand and arm. He was diagnosed with phlebitis, an infection that occurs at an IV site after the IV is removed. On February 27, 2000, the Appellant returned to the emergency room for a second time. Subsequent to examination, he was instructed to elevate his arm and was diagnosed with superficial thrombophlebitis and questionable cellulitis. The Appellant returned to the emergency room on March 14, 2000, and he thereafter continuously sought treatment from numerous physicians and has been provided with a morphine pump for the treatment of continuing pain.

On February 14, 2002, the Appellant filed a civil action against GVMC, alleging negligence by GVMC physicians, nurse, agents, and employees in the improper insertion of an IV in the Appellant's arm, resulting in infiltration and the development of reflex sympathetic dystrophy (hereinafter "RSD"), a nerve disorder which creates a burning sensation in parts of the body.

In preparing for trial, the deposition of Dr. Thomas Furlow was conducted on October 6, 2004. A telephonic deposition of Dr. Furlow was conducted on March 9, 2005. On July 7, 2005, the Appellant's counsel informed the lower court that a medical negligence claim against GVMC's emergency room physicians would be pursued at the trial scheduled for August 22, 2005, and that such medical negligence claim would be pursued through the testimony of Dr. Furlow as a neurology expert. On July 13, 2005, GVMC filed a motion

in limine seeking to exclude the Appellant's claims against emergency room physicians based upon the absence of expert testimony substantiating allegations of negligence, as required by West Virginia Code § 55–7B–7 (1986) (Repl.Vol.2000),[1] a portion of the Medical Professional Liability Act. The lower court granted GVMC's motion in limine.

On August 18, 2005, this Court refused to issue a rule to show cause on the Appellant's requested writ of prohibition to prevent the lower court from enforcing its limiting order. On August 29, 2005, the jury returned a verdict for GVMC. The Appellant's motion to set aside the jury verdict and to award a new trial was denied on January 30, 2006. This appeal followed.

## II. Standard of Review

■ This Court reviews a decision requiring expert testimony to prove claims of negligence under an abuse of discretion standard. In syllabus point eight of *McGraw v. St. Joseph's Hospital*, 200 W.Va. 114, 488 S.E.2d 389 (1997), this Court explained that "[a] trial court is vested with discretion under W. Va. Code § 55–7B–7 (1986) to require expert testimony in medical professional liability cases, and absent an abuse of that discretion, a trial court's decision will not be disturbed on appeal." *See also Daniel v. Charleston Area Med. Ctr.*, 209 W.Va. 203, 544 S.E.2d 905 (2001); *Banfi v. American Hosp. for Rehabilitation*, 207 W.Va. 135, 529 S.E.2d 600 (2000).

■ With regard to the allegation of error in the jury's receipt of evidence of the Social Security disability findings, this Court has consistently held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to

review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). In syllabus point one of *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995), this Court also held as follows:

The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

With these standards of review as a foundation, we address the contentions of the Appellant.

## III. Discussion

### A. Admissibility of Social Security Administration Findings

■ The Appellant contends that the lower court erred by taking judicial notice of the findings of the Social Security Administration in the Appellant's disability hearing, permitting the jury to thereby gain knowledge concerning a medical condition allegedly suffered by the Appellant. The Appellant had applied for Social Security benefits on May 26, 2000. The Social Security hearing addressed the Appellant's claim of disability allegedly occasioned as a result of the placement of the IV in the Appellant's hand while he was a patient at GVMC in February 2000. The Appellant was properly represented by counsel at the Social Security hearing and

---

1. West Virginia Code § 55–7B–7 was insubstantially amended in 2003, as passed March 8, 2003 and effective July 1, 2003. Since the Appellant's civil action was filed in February 2002, the prior version of the statute applies in this case. That statute provides as follows:

The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court. Such expert testimony may only be admitted in evidence if the foundation, therefor, is first laid

establishing that: (a) The opinion is actually held by the expert witness; (b) the opinion can be testified to with reasonable medical probability; (c) such expert witness possesses professional knowledge and expertise coupled with knowledge of the applicable standard of care to which his or her expert opinion testimony is addressed; (d) such expert maintains a current license to practice medicine in one of the states of the United States; and (e) such expert is engaged or qualified in the same or substantially similar medical field as the defendant health care provider.

presented extensive medical evidence. A full opportunity to litigate claims was provided, and the Social Security Administration ultimately determined that the Appellant's disability was due to a somatoform disorder, sometimes referred to as psychosomatic illness.

The Appellant now avers that the circuit court's action of taking judicial notice of such findings in his civil action against GVMC permitted the jury to hear evidence concerning the somatoform disorder upon which the Social Security Administration based its award of disability benefits. Although the jury did not hear evidence regarding the specific monetary amounts of any disability payments,[2] the Appellant contends that reference to the somatoform disorder which formed the basis for the Social Security disability finding was an abuse of discretion. Moreover, the Appellant maintains that he does not actually suffer from somatoform disorder, contending that such disorder was only presented as a basis for his disability in the Social Security hearing because RSD is a condition which does not fit neatly within a "nerve impairment category" for purposes of filing for Social Security disability benefits. In his brief to this Court, the Appellant explains that "[a]fter appellant's counsel and the ALJ discussed the matter, they decided to include the somatoform disorder to assist the appellant in receiving social security disability benefits."

In response to the Appellant's allegations of error in taking judicial notice of the Social Security findings, the Appellee explains that "[t]o assume that the SSA issued a favorable ruling without medical evidence to support their decision is laughable at best." First, the Appellant neither objected to nor appealed any finding of somatoform disorder made by the Social Security Administration. Second, in discussions concerning GVMC's motion requesting the trial court to take judicial notice of the Social Security decision, counsel for the Appellant specifically stated that he did not "have a problem with the actual findings that they found because that is the findings of the ALJ." The Appellant's counsel articulated only a belief the "the factual basis was a little shaky." He further explained: "But I'm not challenging the actual judicial notice part of the findings that they found. If they found Somatoform disorder I think I'm stuck with the final finding from the ALJ." The Appellant's counsel also commented that "I don't believe we can get away from the findings of the ALJ that there may be a Somatoform disorder." Moreover, when the lower court took judicial notice of the findings, the Appellant did not request the lower court to redact or limit the document in any manner.

■ The lower court's determination that judicial notice should be taken of the Social Security findings is in accordance with Rule 201 of the West Virginia Rules of Evidence.[3] In *In re Breedlove*, 186 W.Va. 279, 412

2. The Appellant initially assigned error to the lower court's decision to permit introduction of the Social Security Administration findings due to an alleged violation of the collateral source rule. However, the Appellant has withdrawn that assignment of error based upon the fact that the jury did not reach the issue of damages and actually found in GVMC's favor before addressing damages.

3. Rule 201 of the West Virginia Rules of Evidence provides as follows:
(a) *Scope of Rule.*—This rule governs only judicial notice of adjudicative facts.
(b) *Kinds of Facts.*—A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) *When Discretionary.*—A court may take judicial notice, whether requested or not.
(d) *When Mandatory.*—A court shall take judicial notice if requested by a party and supplied with the necessary information.
(e) *Opportunity to Be Heard.*—A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
(f) *Time of Taking Notice.*—Judicial notice may be taken at any stage of the proceeding.
(g) *Instructing Jury.*—In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

S.E.2d 473 (1991), this Court addressed the circumstances under which judicial notice may be taken of an administrative proceeding and reasoned as follows:

> In the present case, this Court believes that the prior revocation of the license of Meredith Breedlove was an adjudicative fact. An appropriate and readily verifiable record of it was on file with the appellant Commissioner of the Division of Motor Vehicles. The Court believes that such a fact was an adjudicative fact within the meaning of Rule 201 of the West Virginia Rules of Evidence, and this Court believes that in a license revocation proceeding under *W.Va.Code*, 17C–5A–1, judicial notice may be taken of an adjudicative fact if the fact is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the administrative agency, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. The Court further concludes that in the present case Mr. Breedlove's prior conviction was a proper subject for judicial notice and that the circuit court erred in reversing the appellant's decision revoking Mr. Breedlove's license.

186 W.Va. at 282, 412 S.E.2d at 476.[4]

■ The circumstances of this case are accentuated by the fact that counsel for the

Appellant acquiesced to the lower court's taking of judicial notice of the Social Security findings. We have continuously stated that "[t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect." Syl. Pt. 2, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996). We have further explained:

> The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace. . . . It must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

*Id.* at 216, 470 S.E.2d at 170 (citation omitted).

■ While this Court has occasionally invoked the plain error rule to correct an error which occurred without objection, we find no compelling reason to utilize the plain error rule in this factual scenario, nor have we been requested to do so. This Court explained the use of the plain error doctrine as follows in syllabus point seven of *State v.*

---

4. In the present case, the lower court's treatment of the Social Security finding of disability was somewhat analogous to a finding of collateral estoppel with respect to the particular issue of disability due to somatoform disorder. In *Mellon–Stuart Co. v. Hall*, 178 W.Va. 291, 359 S.E.2d 124 (1987), this Court described the doctrine of collateral estoppel and explained that it "applies to issues that were actually litigated in an earlier suit even though the causes of action are different." 178 W.Va. at 298–99, 359 S.E.2d at 131–32. In syllabus point one of *Haba v. The Big Arm Bar and Grill, Inc.*, 196 W.Va. 129, 468 S.E.2d 915 (1996), this Court stated:

> "Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." Syllabus Point 1, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

See also *Stillwell v. City of Wheeling*, 210 W.Va. 599, 605, 558 S.E.2d 598, 604 (2001) ("The doctrine of collateral estoppel applies to preclude the litigation of an *issue* that has been previously resolved."); *Page v. Columbia Nat. Resources, Inc.*, 198 W.Va. 378, 393, 480 S.E.2d 817, 832 (1996) ("[O]nly rarely, if at all, will administrative proceedings provide the same full and fair opportunity to litigate matters as will a judicial proceeding involving the complexity, intensity, and specific inquiries common to a wrongful discharge case."); *Christian v. Sizemore*, 185 W.Va. 409, 412, 407 S.E.2d 715, 718 (1991) ("Collateral estoppel is essentially a doctrine which precludes the relitigation of an *issue*, while res judicata precludes relitigation of the same cause of action." (emphasis supplied)). ·

In this case, the doctrine of collateral estoppel was not utilized to preclude litigation of the Appellant's claims in their entirety. The concept was simply used to estop the Appellant from denying the existence of the finding of disability due to a somatoform disorder. The Appellant properly remained free to proceed on issues of negligence of GVMC.

*Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995): "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." In pertinent part of syllabus point four of *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988), this Court stated that the plain error "doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result."

In *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996), this Court reemphasized that courts should use great caution when considering utilization of the plain error doctrine. Syllabus point seven of *LaRock* provides the following guidance:

An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

196 W.Va. at 299, 470 S.E.2d at 618, Syl. Pt. 7. This Court also observed as follows in *LaRock:*

" 'One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue." [*State v.*] *Miller,* 194 W.Va. [3] at 17, 459 S.E.2d [114] at 128 [ (1995) ], quoting *United States v. Calverley,* 37 F.3d 160, 162 (5th Cir.1994) (en banc), *cert. denied,* 513 U.S. 1196, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995).

196 W.Va. at 316, 470 S.E.2d at 635. We properly recognized that "in general, the law

ministers to the vigilant, not to those who sleep on their rights." *Id.*

Although courts addressing the admissibility of prior administrative adjudications have observed that evidence of worker's compensation or other disability benefits has potential for creation of jury confusion, the significant discretion retained by a trial court to make determinations regarding the admissibility of prior relevant administrative findings has been widely heralded. In *Grover v. Boise Cascade Corp.,* 860 A.2d 851 (Me.2004), for instance, the court's exclusion of evidence of workers' compensation and disability benefits was addressed. 860 A.2d at 859–60. Boise Cascade contended that the court erred by excluding evidence of receipt of workers' compensation and disability benefits pursuant to the collateral source doctrine. Recognizing the possibility of proper admission for purposes other than mitigation of damages recoverable from the tortfeasor, the court found that it is within the trial court's discretion to weigh the probative value of such evidence against the danger of unfair prejudice, confusion of issues, or misleading the jury. The trial court in *Boise* had excluded the evidence because it was concerned with introducing ancillary issues that could confuse the jury. The appellate court concluded as follows: "Although a contrary conclusion could also have been sustainable, we cannot say that the trial court engaged in an unsustainable exercise of its discretion when it excluded the proffered evidence." *Id.* at 859–60.

A similar situation was encountered in *Rhodes v. Curtis,* 2006 WL 1047021 (E.D.Okla.2006). In that case, the court found that evidence of a prior Social Security disability finding would potentially prejudice the jury. Unlike the present case, the administrative findings had not addressed the issue of causation, thereby substantiating the ultimate holding that the administrative findings should not be admitted at the subsequent trial in which causation was an issue for the jury to decide. 2006 WL 1047021 at *2. The *Rhodes* court reasoned as follows:

Since the subject accident, the Social Security Administration has determined that Plaintiffs are disabled, but made no deter-

mination as to the cause of their injuries. The nature, cause, and extent of Plaintiffs' injuries are, however, at issue in this case. The Court therefore finds that any presentation of the determination of the Social Security Administration that Plaintiffs are disabled would result in confusion and undue prejudice.

*Id.*

The discretion to be exercised by the trial court was also explained in *Halloway v. Milwaukee County,* 180 F.3d 820 (7th Cir.1999). In that case, the Seventh Circuit held that "[a]dministrative findings are sometimes admissible as evidence.... Nevertheless, the district court retains significant discretion as to whether such material ought to be admitted." 180 F.3d at 827 n. 9; *see also Cooper v. Carl A. Nelson & Co.,* 211 F.3d 1008, 1018 (7th Cir.2000). In *Johnson v. Yellow Freight System, Inc.,* 734 F.2d 1304 (8th Cir.1984) *cert. denied,* 469 U.S. 1041, 105 S.Ct. 525, 83 L.Ed.2d 413, the Eighth Circuit explained: "In our view, it would be ill-advised to shackle the discretion of trial judges with a rule of *per se* admissibility." 734 F.2d at 1309.

 The recognition of the discretion to be properly exercised during the trial court evaluation appears to be consistent with this Court's reasoning in *Lambert v. Workers' Compensation Div.,* 211 W.Va. 436, 566 S.E.2d 573 (2002). In *Lambert,* this Court addressed the weight to be given to a Social Security disability finding in a worker's compensation determination and stated as follows at syllabus point four:

> The fact that a workers' compensation claimant has been awarded social security disability benefits is persuasive evidence that the claimant is permanently and totally disabled for workers' compensation purposes, and where social security disability is founded on work-related medical conditions that are substantially similar to those being asserted in connection with a work-

ers' compensation claim for permanent total disability, the social security disability award should be given considerable weight.

This Court's discussion regarding the admissibility of prior administrative findings with respect to employment discrimination is also illuminating. In *McKenzie v. Carroll International Corp.,* 216 W.Va. 686, 610 S.E.2d 341 (2004), this Court addressed the issue of admissibility of prior administrative findings. The *McKenzie* Court evaluated the United States Supreme Court's statements in *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). In that case, the United States Supreme Court explained that "[p]rior administrative findings made with respect to an employment discrimination claim may ... be admitted as evidence...." 425 U.S. at 863 n. 39, 96 S.Ct. 1949. Relying upon such language, the *McKenzie* Court reasoned as follows:

> Although *Chandler* indicated that information from the record of an administrative agency in an employment discrimination case may be introduced in a subsequent civil trial, federal courts are "split on the proper method for determining whether [such evidence] will be admissible in an employment discrimination case tried to a jury." *Barfield v. Orange County,* 911 F.2d 644, 649 (11th Cir.1990). A few federal courts appear to hold that evidence from an administrative proceeding is, per se, admissible hearsay under Rule 803(8)(C) of the Federal Rules of Evidence. *See Plummer v. Western Int'l Hotels Co.,* 656 F.2d 502, 505 (9th Cir.1981); *Smith v. Universal Servs., Inc.,* 454 F.2d 154, 157–58 (5th Cir.1972); *Abrams v. Lightolier, Inc.,* 702 F.Supp. 509, 512 (D.N.J.1989); *Strickland v. American Can Co.,* 575 F.Supp. 1111, 1112 (N.D.Ga.1983).

216 W.Va. at 692, 610 S.E.2d at 347 (footnote omitted).[5] Borrowing from language utilized

---

**5.** Rule 803(8) of the West Virginia Rules of Evidence, identical to its federal counterpart, provides that the following are not excluded by the hearsay rule even if the declarant is available:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office

or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state in criminal cases, factual find-

in *Barfield v. Orange County,* 911 F.2d 644 (11th Cir.1990), this Court in *McKenzie* held as follows in syllabus point three:

> In an action alleging unlawful discrimination under the West Virginia Human Rights Act, a trial court may, in its discretion, admit evidence from the record of a prior administrative proceeding held before the West Virginia Human Rights Commission. In making the admissibility determination, a trial court should consider whether the evidence sought to be introduced (1) contains legal conclusions in addition to its factual content; (2) raises questions of trustworthiness under W. Va. R. Evid. 803(8)(C); (3) presents problems cognizable under W. Va. R. Evid. 403; and (4) any other relevant factor.

A similarly unique, yet ultimately practical, approach was crafted by the Arkansas courts. The development of the concept was commenced with an analysis of the collateral source rule and its prohibition of evidence showing that the injured person received payments from another source, *unless* such evidence is relevant for some purpose *other than* mitigation or reduction of damages. *See Ebbing v. State Farm Fire & Cas. Co.,* 67 Ark.App. 381, 1 S.W.3d 459 (1999); *Montgomery Ward & Co., Inc. v. Anderson,* 334 Ark. 561, 976 S.W.2d 382 (1998); *Evans v. Wilson,* 279 Ark. 224, 650 S.W.2d 569 (1983). The Arkansas approach delineates four limited exceptions to the collateral source rule, as set forth succinctly in *Anderson:*

> They are cases in which a collateral source of recovery may be introduced (1) to rebut the plaintiff's testimony that he or she was compelled by financial necessity to return to work prematurely or to forego additional medical care; (2) *to show that the plaintiff had attributed his condition to some other cause, such as sickness;* (3) to impeach the plaintiff's testimony that ·he or she had paid his medical expenses himself; (4) to show that the plaintiff had actually

continued to work instead of being out of work, as claimed.

976 S.W.2d at 384–85 (emphasis supplied).

In similar paradigm, the Eighth Circuit Court of Appeals found that the district court had not abused its discretion in admitting evidence of some of a patient's medical, psychiatric, and Social Security records where the defendant's theory of the case was that the patient's leg amputation was caused by cumulative trauma from decades of knee problems. The records substantiated the patient's history of knee problems. *Smith v. Tenet Healthsystem SL, Inc.,* 436 F.3d 879 (8th Cir.2006).

█ Upon review of the present case, this Court finds no reason to disturb the trial court's discretionary evidentiary decision. The Appellant's attempt to attribute his condition to another cause in the Social Security hearing was the basis for the admission of the Social Security evidence. Under the unique circumstances of this case, we fail to discern any abuse of discretion by the lower court in taking judicial notice of the Social Security hearing findings. As addressed above, rulings on the admissibility of evidence are committed to the sound discretion of the trial court. In making its determination, this trial court was confronted with a plaintiff who had received a favorable, unappealed ruling from the Social Security Administration and subsequently claimed that the findings made in that forum were inaccurate. The findings of the Social Security Administration were relevant to the inquiries being addressed in the trial court.[6] Particularly, the Appellees' theory of the case was that the Appellant suffered from an underlying illness that was not caused by the treatment he received at GVMC. The Social Security finding substantiated that theory. Moreover, not only did the Appellant make no attempt to redact any portions of that document, he actually acquiesced in its admission. "A litigant may not silently acquiesce to an alleged error, or actively con-

---

ings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

**6.** Rule 401 of the West Virginia Rules of Evidence provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

tribute to such error, and then raise that error as a reason for reversal on appeal." Syl. Pt. 1, *Maples v. West Virginia Department of Commerce,* 197 W.Va. 318, 475 S.E.2d 410 (1996). Based upon the foregoing discussion, we affirm the lower court's determinations on the issue of judicial notice of the Social Security hearing findings.

B. Alleged Deviations from the Standard of Care by Emergency Room Physicians

 The Appellant also maintains that the lower court erred by excluding evidence regarding his theory of liability with respect to alleged deviations from the standard of care by emergency room physicians at GVMC. As explained above, when the Appellant revealed his intent to be critical of the medical treatment he received during his return visits to the GVMC emergency room, GVMC filed a motion in limine to preclude such criticisms on the ground that the Appellant lacked the necessary expert testimony on the issue.

 This Court has consistently emphasized that " '[i]t is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.' Syl. Pt. 2, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964)." Syl. Pt. 1, *Farley v. Meadows,* 185 W.Va. 48, 404 S.E.2d 537 (1991). Further, as recognized above, "[a] trial court is vested with discretion under W. Va.Code § 55–7B–7 (1986) to require expert testimony in medical professional liability cases, and absent an abuse of that discretion, a trial court's decision will not be disturbed on appeal." *McGraw,* 200 W.Va. at 116, 488 S.E.2d at 391, syl. pt. 8.

The Appellant claims that his expert, Dr. Thomas Furlow, detected deviations from the standard of care by emergency room physicians. The transcripts from Dr. Furlow's depositions, however, do not corroborate the Appellant's assertions. The deposition testimony provides no indication that Dr. Furlow expressed an opinion that the emergency room physicians deviated from the standard of care. In fact, Dr. Furlow was specifically asked the following series of questions:

Q. So I guess—what I'm saying is if he's timely back in the ER is his development of RSD in any way preventable?

A. I would say the average case is generally not preventable, probably not even diagnosable in the earliest phase; particularly if there's ongoing tissue injury.

Q. When would have been the first time, in your opinion, when Mr. Brooks condition could have been diagnosed?

A. Well, if he failed to respond to antibiotics and moist heat and elevation, probably would have been a week or two one could certainly suspect a diagnosis.

Q. And, within a week or two he is no longer under the care of the folks at Greenbrier Medical Center?

A. I gather so.

Q. Let's assume that a diagnosis is properly made one to two weeks after his Greenbrier Medical Center discharge on February 23rd, 2000; if a diagnosis is promptly made is there anything that could have been done that would have diminished the extent of his illness as it exists today?

A. Well, early intervention with physical therapy, some would try a stellate ganglion block, the use of Beta blockers or calcium channel blockers are often advocated to attempt to bring the disease to a halt. But this disease takes off sometimes and cannot be stopped.

Q. Do you have an opinion, to a reasonable degree of medical certainty, if Mr. Brooks would have been timely diagnosed, been treated, whether or not RSD could have either, one, have been stopped or, two, slowed it to some degree that it would not be as severe as it is today?

A. I don't think I could prognosticate, no. It's inherently unpredictable.

Similarly, the telephonic deposition of Dr. Furlow on March 9, 2005, failed to provide evidence of deviation from the standard of care. In that deposition, Dr. Furlow discussed nursing standards of care and did not address emergency room physicians' standard of care. Based upon the review of this Court, we find no abuse of discretion in the

trial court's determination that the Appellant has produced no expert to establish that GVMC emergency room physicians breached the appropriate standard of care in their treatment of the Appellant. We consequently affirm the trial court's decision on that issue.

### IV. Conclusion

Upon thorough review by this Court, we find that the trial court committed no reversible error in either granting judicial notice of the Social Security findings or in granting GVMC's motion in limine to preclude allegations of negligence against emergency room physicians. We consequently affirm the lower court in all respects.

Affirmed.