538 S.E.2d 378

**Kathie WINGROVE, Widow of Robert Wingrove, Deceased, Petitioner Below, Appellant,**

v.

**WORKERS' COMPENSATION DIVISION and Consolidation Coal Company, Respondents Below, Appellees.**

No. 26988.

Supreme Court of Appeals of West Virginia.

Submitted March 17, 2000.

Decided July 12, 2000.

M. Jane Glauser, Esq., Jonathan C. Bowman, Esq., Seibert & Kasserman, L.C., Wheeling, West Virginia, Attorneys for the Appellant.

Edward M. George, III, Esq., Janette D. Simmons, Esq., Phillips, Cardill, Kaiser & Altmeyer, Wheeling, West Virginia, Attorneys for Appellee, Consolidation Coal Company.

McGRAW, Justice:

This appeal arises from an order of the Workers' Compensation Appeal Board dated November 30, 1998 which reversed an order of the Workers' Compensation Office of Judges awarding Robert C. Wingrove a permanent total disability award with an onset date of October 16, 1992. After the appeal was granted, Mr. Wingrove died and his dependent widow, Kathie Wingrove, was substituted as the petitioner. The threshold question presented in this case concerns whether a dependent widow can seek a final adjudication concerning permanent total disability benefits awarded during the claimant's life, and the second question concerns the merits of permanent total disability benefits. Based on the relevant statutes and case law, we find that substitution of the dependent widow as the petitioner is proper and that Mr. Wingrove was entitled to permanent total disability benefits payable from the second injury reserve with an onset date of October 16, 1992.

I.

On July 24, 1984, the claimant, a coal miner employed by Consolidation Coal Company, fell backwards over a piece of equipment injuring his back. After conservative treatment, the claimant, on June 30, 1986, was released by his doctor to return to work. The claimant continued to work until February 13, 1987, when he accepted early retirement.

Numerous evaluations and orders followed. The first order from the Workers' Compensation Division dated March 27, 1987 was based on Dr. Sam Vukelick's December 1, 1986 evaluation and awarded no permanent partial disability benefits. Thereafter, the claimant was evaluated by Dr. Jonathan Himmelhoch, a psychiatrist; Mary Cogar, Dan Kilgore and Cheryl Lynch, vocational experts; Thomas Andrews, a clinical psychologist; and Dr. Paul Hedges. Although several of these reports indicated that the claimant could not return to his previous work, others indicated that the claimant could per-

form light work. The claimant was awarded social security disability benefits on December 7, 1988, with an onset date February 13, 1987, the date of claimant's last employment. On February 9, 1990, the claimant received a United Mine Workers of America disability pension.

On October 16, 1992, Dr. J.P. Griffith, Jr. evaluated the claimant and found him totally disabled with a seven percent permanent partial impairment to his low back in this claim. On May 5, 1993, Dr. Jerome Massenburg evaluated the claimant and found a three percent psychiatric impairment with poor rehabilitation prospects. By order dated September 9, 1993, the Division granted the claimant a ten percent permanent partial disability award (seven percent for orthopedic impairment and three percent for psychiatric impairment).

On September 23, 1994, the Division granted the claimant an additional eleven percent permanent partial disability and a permanent total disability award, payable from the second injury reserve, with an onset date of February 13, 1987. The employer protested and submitted a report from Dr. Charles Weise who found no psychiatric impairment related to the claimant's compensable injury.

The Office of Judges, by order dated April 28, 1998, modified the Division's order by finding the claimant's permanent total disability award payable from the second injury reserve with an onset date of October 16, 1992, based on Dr. Griffith's report. The Office of Judges further found no additional permanent partial disability award should be granted above the ten percent permanent partial disability previously awarded. Both the claimant and employer appealed. The claimant appealed seeking to reinstate the February 13, 1987 onset date for permanent total disability, and the employer appealed seeking reversal of the permanent total disability award.

By order entered on November 30, 1998, the Appeal Board found the previously awarded ten percent permanent partial disability award fully compensated the claimant and reversed the permanent total disability award. On December 22, 1998, the claimant appealed to this Court, seeking reinstatement of his permanent total disability award, with an onset date of February 13, 1987.

This Court, by order entered December 20, 1999, granted the appeal, 4–1 (Maynard, J., dissenting, with Workman, J., participating, and Scott, J., not participating). On March 13, 2000 while the case was pending, the claimant died. On May 23, 2000, the Court granted the motion of Kathie Wingrove, the dependent widow, to substitute her as the petitioner in this proceeding.

These facts present two questions: (1) The effect of a claimant's death during the long adjudicatory process concerning a previously granted permanent total disability award; and, (2) If the appeal survives the claimant's death, a decision on the issue of permanent total disability benefits.

## II.

■ Rule 27(a), Rules of Appellate Procedure, sets forth the procedure for substitution of parties when a party dies after a case is appealed to this Court. Generally, the personal representative of the deceased party may be substituted. Rule 27(a) states, in pertinent part:

> If a party dies after an appeal is granted, or while a proceeding is otherwise pending in the Supreme Court, the personal representative of the deceased party may be substituted as a party on motion filed by the representative or by any party with the Clerk. . . . If the deceased party has no representative, any party may suggest the death on the record and proceedings shall then be had as the Court may direct. . . .

■ In the present case, Mr. Wingrove died after his appeal was granted. His widow filed a motion to be substituted as a party. Based on Rule 27(a), Rules of Appellate Procedure, we find that when a claimant in a Workers' Compensation case dies after an appeal is granted, or while a proceeding is otherwise pending in this Court, a dependent or, if appropriate, the personal representative of the deceased claimant may be substituted as a party on motion filed by the representative or by any party with the Clerk.

A dependent may be substituted for a deceased claimant in a Workers' Compensation case because W. Va.Code 23–4–6 [1999] limits the payment of compensation benefits to the dependents of the deceased claimant. W. Va.Code 23–4–6(1) [1999] provides, in pertinent part:

Compensation, either temporary total or permanent partial, under this section shall be payable only to the injured employee and the right thereto shall not vest in his or her estate, except that any unpaid compensation which would have been paid or payable to the employee up to the time of his or her death, if he or she had lived, shall be paid to the dependents of such injured employee if there be such dependents at the time of death.

A similar restriction is found in W. Va.Code 23–4–6(g) [1999] which states, in pertinent part:

Should a claimant to whom has been made a permanent partial award die from sickness or noncompensable injury, the unpaid balance of such award shall be paid to claimant's dependents as defined in this chapter, if any; such payment to be made in the same installments that would have been paid to claimant if living: Provided, That no payment shall be made to any surviving spouse of such claimant after his or her remarriage, and that this liability shall not accrue to the estate of such claimant and shall not be subject to any debts of, or charges against, such estate.

*See, Ashworth v. Workmen's Compensation Comm'r*, 150 W.Va. 537, 148 S.E.2d 364 (1966) (dependent widow is entitled to unpaid balance of an award of permanent partial disability made during the lifetime of the claimant).

■ Neither W. Va.Code 23–4–6(*l*) nor (g) [1999] address compensation payable because of an award of permanent total disability. Workers' Compensation rights and resultant remedies are statutory and in order to ascertain the availability and scope of benefits, this Court looks to the plain meaning to ascertain the legislature's intention. " 'The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syl. pt. 1, *Smith v. State*

*Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 6, *State ex. rel. ACF Industries, Inc. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176 (1999).

■ Although these Code provisions specifically address permanent partial and temporary total disability awards, the legislature's intention is plainly to limit payment of any type of compensation award, including permanent total disability payments, to the dependents of a deceased claimant. We hold that the right to payment of any type of compensation award, permanent partial disability, temporary total disability or permanent total disability, which was awarded during the lifetime of the claimant and which would have been payable to the claimant, does not vest in the claimant's estate, but does vest in the dependents of the claimant, if there are dependents at the time of death.

In this case, we find that the substitution of Mrs. Wingrove was proper under Rule 27(a), Rules of Appellate Procedure. The payment of any compensation awarded during the lifetime of Mr. Wingrove which would have been payable to him, would vest in his dependents, including his dependent widow.

### III.

■ Having determined that the Rules of Appellate Procedure govern the substitution of the parties in an appeal pending before this Court, and that the Workers' Compensation statute limits payments of awards made during the lifetime of the claimant to the claimant's dependents, the next question concerns the effect of a claimant's death during an appeal of a subsequent adverse decision revoking an award.

We have long held that "[l]ong delay in processing claims for workmen's compensation is not consistent with the declared policy of the Legislature to determine the rights of claimants as speedily and expeditiously as possible. W. Va.Code, 23–5–3a." Syl. pt.1, *Workman v. Workmen's Compensation Comm'r*, 160 W.Va. 656, 236 S.E.2d 236 (1977); syl. pt. 3, *Meadows v. Lewis*, 172 W.Va. 457, 307 S.E.2d 625 (1983). In this case, Mr. Wingrove was awarded permanent

total disability benefits by the Division in 1994 (seven years after his last working day). Almost four years later in 1998, the Office of Judges modified the award with a later onset date. Seven months later in 1998, the Appeal Board reversed the permanent total disability award. The case was appealed to this Court on December 22, 1998. While the appeal was pending, the claimant died on March 13, 2000. In this case, the adjudicatory process after the Division's award of permanent total disability has taken almost six years.

■ According to W. Va.Code 23–4–6(g) [1999], the general rule is that an award of benefits during the lifetime of the claimant is necessary for payment of unpaid benefits to a claimant's dependents after his or her death. *See* syl. pt. 2, in pertinent part, *Hughes v. State Compensation Comm'r,* 145 W.Va. 629, 116 S.E.2d 153 (1960) (no benefits because deceased claimant was not "a claimant to whom an award has been made"). Several exceptions are outlined in W. Va. Code 23–4–6(f) (severance of listed bodily members), and (h) (finding by occupational pneumoconiosis board) [1999].

The plain meaning of the statute requires an award to be given during a claimant's lifetime for the payment of unpaid benefits to a claimant's dependents after his or her death. However, the statute does not address the effect of a subsequent reversal of an award. Once again, the intent of the Legislature is of primary importance in interpreting the statute. *Smith, supra,* Section II. Syl. pt. 2 of *Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575 (1990) emphasizes that statutory construction should "further justice" by holding, in pertinent part:

> "It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. . . ." Syl. pt. 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925).

Although an award is required, W. Va.Code 23–4–6(g) [1999] does not require the award to be final. By requiring an award, the problems of development of evidence after a claimant's death are avoided. In this case, the claimant's death did not create any evidentiary problem. Most of the evidence was submitted before the Division's September 23, 1994 order, with the final report submitted on March 6, 1995. By not requiring a final award, the effect of delays in the adjudicatory process is minimized. In this case, there were long delays in the adjudicatory process; a review by the Office of Judges took almost four years. To require a final award would not "further justice" (*Click, id.*) because it would reward a system that did not "determine the rights of claimants as speedily and expeditiously as possible." *Workman, supra.*

■ Based on W. Va.Code 23–4–6 [1999], we hold that if a claimant in a Workers' Compensation case to whom an award was made, dies while appealing a subsequent adverse decision concerning that award, the appeal shall proceed as if death had not occurred. Any unpaid compensation awarded as a result of such an appeal, which would have been paid or payable to the employee up to the time of his or her death, shall not accrue to the estate of the claimant, but shall be payable to the dependents of the deceased claimant, if there are dependents at the time of death.

In this case, the claimant was awarded permanent total disability by the Division on September 23, 1994. Based on the award he received during his lifetime, his death while appealing a subsequent adverse decision does not stop the appeal. However, any benefits resulting from the appeal do not accrue to his estate but can be payable to his dependents, including his dependent widow.

**IV.**

■ Having determined that the claimant's death has not stopped the appeal process, we now turn to the question of whether the medical evidence justifies a permanent total disability award and, if a permanent total disability award is justified, what is the appropriate onset date. Permanent total disability awards are granted pursuant to W. Va.Code 23–4–6(n)(2) [1999], which states, in pertinent part:

> A disability which renders the injured employee unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he or she has previously engaged

with some regularity and over a substantial period of time shall be considered in determining the issue of total disability.

The statutory test for permanent total disability is interpreted in syl. pt. 3 of *Posey v. State Workmen's Compensation Comm'r*, 157 W.Va. 285, 201 S.E.2d 102 (1973), which states:

A claimant is permanently and totally disabled under our workmen's compensation statute when he is unable to perform any remunerative work in a field of work for which he is suited by experience or training. Each case will be considered on the peculiar facts for the reason that what may be totally disabling to one person would only be slightly disabling to another of a different background and experience.

In *Cardwell v. State Workmen's Compensation Comm'r*, 171 W.Va. 700, 706, 301 S.E.2d 790, 796 (1983), we acknowledged that an injured worker who cannot be retrained because of lack of education, diminished intelligence or advanced age may be totally disability even though the medical evidence demonstrates a partial disability. Syl. pt. 7 of *Cardwell* states:

If evidence of the degree of obvious physical impairment, and of other factors such as claimant's mental capacity, education, training, or age, places a claimant *prima facie* in the odd-lot category, the burden is on an employer to show that some kind of suitable work is regularly and continuously available to the claimant.

 In this case, the evidence indicates that the claimant was rendered permanently and totally disabled due to his injury in this claim and pre-existing disabilities when his age, education, work experience, training and vocational potential are considered. The claimant suffered numerous occupational injuries and received, including the award in this claim, an eighteen percent permanent partial disability award. The claimant has only an eighth grade education and because of his age, was not a suitable candidate for vocational rehabilitation. Based on the evidence, we find that the claimant was permanently and totally disabled.

 In this case, the claimant was not initially permanently and totally disabled;

rather he became progressively worse. In *Miracle v. Workers' Compensation Comm'r*, 181 W.Va. 443, 383 S.E.2d 75 (1989) and *Young v. Workers' Compensation Comm'r*, 181 W.Va. 440, 383 S.E.2d 72 (1989), we discussed how an onset date for permanent total disability should be determined in such a case. Syl. pts. 1 and 2 of *Young* set out the holding in both cases:

1. "A compensable injury which does not initially or of itself produce a permanent total disability may become progressively worse over time or combine with prior impairments under the second injury statute, W. Va.Code, 23-3-1, so as to result in a permanent total disability. In such circumstances, the 'date of disability,' from which a permanent total disability award will be calculated and paid within the meaning of W. Va.Code, 23-4-18, is the first date on which medical or other expert evidence indicated that such permanent total disability existed." Syllabus, *Miracle v. Workers' Compensation Comm'r*, 181 W.Va. 443, 383 S.E.2d 75 (1989).

2. Where there are multiple reports from various experts which establish that the claimant has currently reached permanent total disability status, the Workers' Compensation Commissioner has a reasonable discretion in selecting the beginning date for the award and payment of permanent total disability benefits. The selection should be based on the dates upon which the experts found the claimant to have been permanently and totally disabled.

 In this case, although there were findings that the claimant was permanently and totally disabled as early as 1987, only one expert considered all of the claimant's potential in determining that the claimant was permanently and totally disabled.[1] Dr. J.P. Griffith, Jr., who evaluated the claimant on October 16, 1992, found that the claimant did not have the residual functional capacity to return to work for which he was suited by his experience and training. Dr. Griffith's findings are substantiated by the vocational, psychiatric and other orthopedic evidence. Based on Dr. Griffith's report, we find under *Miracle* and *Young* the onset date for perma-

---

1. The early reports include the report of Dr.

Jonathan Himmelhoch, a psychiatrist, who ex-

nent total disability in this case is October 16, 1992.

## V.

In conclusion, we find that the Division and Office of Judges were correct in awarding permanent total disability benefits based on the evidence of record. Further, we agree with the Office of Judges decision modifying the onset date to October 16, 1992 based on Dr. Griffith's report. Given the evidence of disability and onset date, we find that the Appeal Board was clearly wrong in not sustaining the decision of the Office of Judges.

Therefore, we reverse the decision of the Workers' Compensation Appeal Board and remand this claim for entry of a permanent total disability award with an onset date of October 16, 1992 and for the payment of any resultant benefits accrued on or before the claimant's death to the claimant's dependents.

Reversed and remanded.

amined the claimant on December 7, 1987. Dr. Himmelhoch opined that the claimant was permanently and totally disabled, but Dr. Himmelhoch failed to consider the potential for vocational rehabilitation. Several vocational assessments found the claimant had transferable skills or could perform light or medium work. Although Dan Kilgore's January 13, 1988 vocational report found the claimant was not a good candidate for vocational rehabilitation and could not return to work full time, Mr. Kilgore failed to supply objective standards.