566 S.E.2d 573

Harvey LAMBERT, Appellant,

v.

WORKERS' COMPENSATION DIVISION and Vecellio & Grogan, Inc., Appellees.

and

Billy Payne, Jr., Appellant,

v.

Workers' Compensation Division and Smith International, Inc. Appellees.

and

Columbus Baisden, Appellant,

v.

Workers' Compensation Division and Hatfield Contracting Service Appellees.

Nos. 30041–30043.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 9, 2002.

Decided April 26, 2002.

Concurring and Dissenting Opinion of Justice Maynard July 3, 2002.

438

Jerry D. Alford, Alum Creek, West Virginia, Attorney for Appellant Harvey Lambert.

James M. Robinson, Robinson & Rice, L.C., Huntington, West Virginia, Attorney for Appellant Columbus Baisden.

Otis R. Mann, Jr., Charleston, West Virginia, Attorney for Appellant Billy Payne, Jr.

Darrell V. McGraw, Jr., Attorney General, Sandra L. Evans, Assistant Attorney General, Employment Programs Litigation Unit, Charleston, West Virginia, Attorneys for Appellee, Workers' Compensation Division.

DAVIS, Chief Justice:

In two [1] workers' compensation cases, which have been consolidated for purposes of this Court's review, claimants who have been awarded permanent total disability challenge the date determined to be the onset of their total disability. In each case the date of onset of total disability was set by the date of an examination report that concluded the claimant was permanently and totally disabled. Each of the claimants argues that the onset date of his total disability should have been established by an earlier event. In one instance the claimant argues that the onset date should be the date he underwent a below the knee amputation. In the remaining case, the claimant argues that the onset date should coincide with the date he was awarded social security disability benefits. We conclude that certain criteria should be considered in evaluating the evidence to determine the onset date of permanent total disability, and that a social security disability award is persuasive evidence of the onset of permanent total disability. More specifically, we find that a social security disability award should be given considerable weight when it has been granted for a condition substantial-

---

1. There were initially three cases consolidated for appeal purposes. During oral argument, however, this Court was made aware that the Division had, subsequent to the filing of his appeal, granted Columbus Baisden the relief he sought. As a consequence, his appeal has become moot and will not be addressed.

ly similar to that for which a permanent total disability award is sought.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Following is a brief statement of the relevant facts pertaining to each of the two cases herein consolidated.

### A. Harvey Lambert

On October 21, 1981, while working as a heavy equipment operator, Harvey Lambert (hereinafter "Mr. Lambert") seriously injured his right leg when he had to jump from a truck he was operating after the drive shaft failed.[2] Specifically, Mr. Lambert suffered a comminuted fracture[3] to the lower right tibia with ankle dislocation, and a fractured right fibula. He attempted to return to his job after this injury, apparently working intermittently from January 1983 until sometime in 1995. However, he was unable to continue his employment as he could no longer maneuver clutches and perform other requirements of operating heavy equipment.

Following his leg injury, Mr. Lambert developed chronic osteomyelitis[4] in the leg and, over a period of about fifteen years, he endured approximately twenty-eight surgical procedures attempting to save the leg. These procedures included debridement, a bone graft using part of his hip bone, a muscle graft using muscle from his left shoulder, and various skin grafts. Ultimately, on December 18, 1996, Mr. Lambert required a below-the-knee amputation of his right leg. Shortly after the amputation, he developed deep vein[5] thrombophlebitis[6] in his left leg requiring the placement of a vena cava[7] filter. He also developed pulmonary emboli[8] in his left lung. In the years following the amputation, Mr. Lambert has suffered phantom pain in the right leg and soreness at the stump. He has also experienced pain in his hip and shoulder that is associated with his prior surgeries, and pain associated with changes in his gait resulting from the amputation. In addition to his chronic pain, Mr. Lambert also suffers from major depression. He apparently takes numerous medications for his various symptoms. He has been awarded a total of 59% permanent partial disability (hereinafter "PPD") in connection with this injury, including 10% for the psychiatric residual of his major depression. According to the record in this case, Mr. Lambert completed his formal education only through the eighth grade. His history of employment has been in jobs requiring moderate to heavy exertion.

Mr. Lambert apparently applied for permanent total disability (hereinafter sometimes "PTD") on more than one occasion prior to his amputation, but his requests were consistently denied. On May 26, 1999, he once again applied for PTD. In support of his application, he submitted the report of an examination performed by Dr. Bruce A. Guberman, a disability evaluating physician and certified independent medical examiner. In his report dated June 15, 1998, Dr. Guberman concluded that "[c]onsidering the patient's age, education, work experience and the objective evidence of his impairment re-

2. Mr. Lambert was approximately thirty-three years old at the time of this accident.

3. A comminuted fracture is "a fracture in which there are several breaks in the bone, creating numerous fragments." *Mosby's Medical & Nursing Dictionary*, 266 (2d ed.1986).

4. Osteomyelitis is defined as "local or generalized infection of bone and bone marrow, usually caused by bacteria introduced by trauma or surgery, by direct extension from a nearby infection, or via the bloodstream." *Mosby's at* 814. Chronic osteomyelitis "may persist for years with exacerbations and remissions despite treatment." *Id.*

5. A deep vein is "one of the many systemic veins that accompany the arteries, usually enclosed in a sheath that wraps both the vein and the associated artery." *Mosby's at* 323.

6. Thrombophlebitis is "inflammation of a vein, often accompanied by formation of a clot." *Mosby's at* 1123.

7. The vena cava is "one of two large veins returning blood from the peripheral circulation to the right atrium of the heart." *Mosby's at* 1182.

8. Pulmonary embolism is "the blockage of a pulmonary artery by foreign matter as fat, air, tumor tissue, or a thrombus [blood clot] that usually arises from a peripheral vein." *Mosby's at* 947.

lated to the October 21, 1981 injury, I do not believe that the patient is able to sustain gainful employment on a full time basis.... I believe that Mr. Lambert is permanently disabled from his prior type of employment." Mr. Lambert also tendered the report of a vocational consultant, Mr. Anthony Michael, Jr., dated May 5, 1999. Mr. Michael similarly concluded

> When considering this claimant's vocational profile; an individual approaching advanced age (51) with a limited education (8th grade), no transferable work skills, severe physical limitations, moderate mental limitations and chronic pain it is this consultant's opinion that there would be no jobs that this individual could perform and the claimant's inability to work is directly related to limitations which have resulted from his work-related injury.

In a subsequent deposition, Mr. Michael was asked to speculate when Mr. Lambert actually became totally disabled. Mr. Michael explained that he had reviewed numerous medical reports regarding Mr. Lambert's condition and, after expressing the difficulty of estimating a disability at some earlier point in time, he stated "the best I can determine, it looks like sometime in the years 1991, '92 would be my best estimate." In addition, Mr. Michael qualified his estimation by stating that he did not have any contact with Mr. Lambert in the early 1990's. Finally, upon further questioning, Mr. Michael stated, based upon his review of Mr. Lambert's medical records, that there did not appear to be any period of time following his amputation that Mr. Lambert would have been able to return to full time employment.

Dr. Bernard Nolan, an orthopedic surgeon, examined Mr. Lambert on behalf of the Division. In his report dated March 19, 1998, he stated "[i]n my opinion Mr. Lambert has reached maximum medical improvement. He is not working and, in my opinion, he is not capable of returning to gainful employment."

A rehabilitation assessment was performed in June 1999, and it was determined that vocational rehabilitation services would not be useful to Mr. Lambert due to the residuals of his injury. The evaluator, Mr. John W. McCue, opined that Mr. Lambert's "age and limited education, along with suitable gainful employment opportunities would hinder any attempt at feasible vocation rehabilitation opportunities."

On August 13, 1999, Mr. Lambert was awarded Permanent Total Disability by the Workers' Compensation Division. The Division determined the onset date of Mr. Lambert's total disability was May 5, 1999, the date of Mr. Michael's vocational evaluation report. In this regard, the Division stated that Mr. Michael's report was "the first evidence received by the Division that states claimant is permanently and totally disabled from a vocational, as well as medical and psychiatric, standpoint." Mr. Lambert appealed the Division's determination of the onset date of his disability. The Workers' Compensation Office of Judges affirmed the Division's determination by order entered July 10, 2000, similarly concluding that Mr. Michael's report was the

> first piece of reliable evidence received by the Division to show that, from a vocational standpoint, the claimant was permanently totally disabled.

Mr. Lambert then appealed to the Workers' Compensation Appeal Board, where the disposition of his case was again affirmed, by order entered April 30, 2001, which order is presently before this Court for review.

### B. Billy Payne, Jr.

Billy Payne, Jr., (hereafter referred to as "Mr. Payne") was working as a welder on September 20, 1983, when a chair in which he was sitting overturned and he sustained an injury to his lower back.[9] He was twenty-two years old at the time of this injury.[10] Subsequent thereto, Mr. Payne underwent surgery for a ruptured disc. The diagnosis of Mr. Payne's work-related back condition

---

9. Apparently, Mr. Payne had sustained three earlier injuries to his lower back. All of the earlier back injuries occurred while Mr. Payne was employed at a convalescent center. The parties do not indicate whether Mr. Payne received PPD awards for any of these injuries.

10. Mr. Payne is now approximately thirty-nine years old.

has been stated as chronic low back syndrome with failed lumbar disc surgery[11] associated with severe degeneration of the disc space of L4–5. He also suffers from severe pain, limitations of movement, right hand grip weakness, major depression and anxiety. He has been awarded 31% PPD for orthopedic impairment, and 15% PPD for psychiatric impairment. Thus, he has been granted a total PPD award of 46%.

On July 20, 1990, Mr. Payne filed a petition seeking PTD. However, PTD benefits were denied by a decision of the OOJ dated December 9, 1993. In his order denying PTD benefits, the administrative law judge noted one evaluator's opinion that Mr. Payne was poorly motivated to return to work. In addition, another examiner, who watched Mr. Payne depart from his office building after an evaluation, observed an inconsistency between Mr. Payne's evaluation and his normal behavior. The order also detailed that intellectual functioning evaluations of Mr. Payne rendered varied results. The lowest score he received indicated a full scale IQ of 78, while a later test suggested a full scale IQ of 91. The OOJ decision denying PTD benefits was ultimately affirmed by the WCAB on October 11, 1994. This Court refused to hear the case on appeal.

Thereafter, Mr. Payne was awarded Social Security Disability benefits on November 19, 1996. It appears that the evidence relied upon by the Social Security Administration was essentially the same evidence that had been submitted to the Division in connection with Mr. Payne's first petition for PTD benefits, which petition had been denied. Nevertheless, the Social Security Administration ALJ found that, for Social Security Disability purposes, Mr. Payne's total disability commenced on February 17, 1988. Mr. Payne then filed, on April 7, 1998, a second petition seeking PTD benefits from the Workers' Compensation Division. Mr. Payne was referred by the Division for psychiatric, func-

tional capacity, rehabilitation, and orthopedic evaluations.

The psychiatric evaluation was conducted by Dr. Ahmed D. Faheem. In his report dated February 10, 1999, Dr. Faheem found that Mr. Payne's psychiatric problems, in and of themselves, were neither disabling nor progressive. A functional capacity evaluation was conducted by Lisa Muckleroy. By letter dated January 27, 1999, Ms. Muckleroy reported that Mr. Payne "exhibited Symptom Exaggeration and Inappropriate Illness Behavior and he failed 76% of his Validity Criteria giving him an Invalid Validity Profile, indicating submaximal effort." As a result of Mr. Payne's conduct during the evaluation, the results obtained therefrom were considered invalid by Ms. Muckleroy. A rehabilitation evaluation was performed by Mr. Olen J. Dodd. Mr. Dodd, whose report was dated May 7, 1999, determined that Mr. Payne could function only in sedentary or light ranges of unskilled jobs,[12] and concluded that Mr. Payne would not require rehabilitation services. Finally, Mr. Payne received an orthopedic evaluation by Dr. George Orphanos, an orthopedic surgeon, who, by report dated April 5, 1999, opined that Mr. Payne was permanently and totally disabled.

Based upon the foregoing evidence, Mr. Payne was ultimately granted PTD benefits by order entered on September 16, 1999. In its order granting PTD to Mr. Payne, the Division stated

[s]pecial attention has been given to the decision dated November 19, 1996, from the social security administration granting the claimant's application for social security disability benefits based upon the same condition as is before the Workers' Compensation Division at this time. The granting of social security disability benefits is persuasive upon the issue of permanent total disability since the social security disability definition is more restrictive than that of the applicable workers' com-

---

11. In a deposition, Dr. George Orphanos explained that this type of diagnosis is given when, after surgery, a patient continues to have back pain and pain down the leg, especially if additional testing was done and a myelogram and MRI did not show additional problems other than scaring.

12. The Division has concluded that Mr. Payne's work history contains no evidence of transferable skills usable in light or sedentary work.

pensation standard. *See Cardwell v. SWCC,* 171 W.Va. 700, 301 S.E.2d 790, at 793 n. 3 (1983).

The onset date of Mr. Payne's PTD was determined to be April 5, 1999, the date of Dr. Orphanos' report.

Mr. Payne appealed the Division's determination of the onset date of his disability, arguing that he was entitled to an onset date that coincided with his award of social security disability benefits. In support of his appeal, Mr. Payne submitted the deposition testimony of Dr. Orphanos. In his deposition, Dr. Orphanos expressed his belief that, at the time of his evaluation of Mr. Payne, Mr. Payne's back condition was the same with regard to his inability to work as it was on the date when Mr. Payne was granted social security disability benefits.[13] By decision entered August 3, 2000, the Workers' Compensation OOJ affirmed the onset date established by the Division. The WCAB similarly affirmed, by order entered April 30, 2001. It is from this order of the WCAB that Mr. Payne appeals.

## II.

### STANDARD OF REVIEW

In this case we are first asked to reconsider the method by which onset dates for PTD awards are determined. This presents a question of law subject to de novo review.

Where the issue on an appeal is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review. Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995); Syl. pt. 1, *University of West Virginia Bd. of Trustees on Behalf of West Virginia University v. Fox,* 197 W.Va. 91, 475 S.E.2d 91 (1996).

*Conley v. Workers' Comp. Div.,* 199 W.Va. 196, 199, 483 S.E.2d 542, 545 (1997). In addition, we are asked to evaluate the actual onset dates assigned by the Division in the cases underlying this appeal. The date of

onset of PTD is a factual question that will not be reversed unless it is plainly wrong.

" ' "This Court will not reverse a finding of fact made by the Workmen's Compensation Appeal Board unless it appears from the proof upon which the appeal board acted that the finding is plainly wrong." Syl. pt. 2, *Jordan v. State Workmen's Compensation Commissioner,* 156 W.Va. 159, 191 S.E.2d 497 (1972), quoting, Syllabus, *Dunlap v. State Workmen's Compensation Commissioner,* 152 W.Va. 359, 163 S.E.2d 605 (1968).' Syllabus, *Rushman v. Lewis,* 173 W.Va. 149, 313 S.E.2d 426 (1984)." Syl. pt. 1, *Conley.*

*Rhodes v. Workers' Comp. Div.,* 209 W.Va. 8, 12, 543 S.E.2d 289, 293 (2000). We have also explained that

[T]he plainly wrong standard of review is a deferential one, which presumes an administrative tribunal's actions are valid as long as the decision is supported by substantial evidence. Syl. pt[.] 3, *In re: Queen,* 196 W.Va. 442, 473 S.E.2d 483 (1996); *Frymier–Halloran v. Paige,* 193 W.Va. 687, 695, 458 S.E.2d 780, 788 (1995).

*Conley,* 199 W.Va. at 199, 483 S.E.2d at 545.

Finally, because we herein consider the WCAB's disposition of the cases at issue, we note that,

[The WCAB] shall reverse, vacate or modify the order or decision of the administrative law judge if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative law judge's findings are:

(1) In violation of statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the administrative law judge; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

---

**13.** Dr. Orphanos did not examine Mr. Payne in connection with his Social Security Disability Claim. Apparently, Dr. Orphanos reviewed medical reports and the written decision of the Social Security Administration to reach his conclusion that Mr. Payne's back condition had not changed.

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va.Code § 23–5–12(b) (1995) (Repl.Vol. 1998).

## III.

## DISCUSSION

### A. Onset Date for Permanent Total Disability

In this case we are asked by two workers' compensation claimants, both of whom have been determined to be PTD, to consider the appropriate method by which the Division should determine the date of the onset of their PTD. The relevant statute merely directs that "[i]n all cases where compensation is awarded or increased, the amount thereof shall be calculated and paid from *the date of disability.*" W. Va.Code § 23–4–18 (2001) (Supp.2001) (emphasis added).[14] The phrase "date of disability" is not statutorily defined, and no statutory guidance is provided regarding how that date should be determined. Consequently, in the absence of legislative direction, this Court has been required to discern a suitable approach. Following is a brief review of how the question has been addressed thus far.

■ In *Miracle v. Workers' Compensation Commissioner,* 181 W.Va. 443, 383 S.E.2d 75 (1989), this Court was asked to resolve the very issue herein raised. In *Miracle,* the Workers' Compensation claimant had received a PTD award with an onset date that coincided with the date of a report in which a medical doctor opined that all of the various impairments the claimant had accumulated from multiple injuries combined to render him permanently and totally disabled. In affirming this disposition of the case, the *Miracle* Court first reviewed the scant precedent then available on this issue, which consisted of only two helpful cases. *See*

*Anderson v. State Workers' Comp. Comm'r,* 174 W.Va. 406, 327 S.E.2d 385 (1985), and *Burgess v. State Comp. Comm'r,* 121 W.Va. 571, 5 S.E.2d 804 (1939).[15] The Court then acknowledged the difficulties associated with determining the onset date of permanent total disability, particularly when the disability arises from multiple injuries or the progression of an injury.

Our cases illustrate some of the obvious, inherent difficulties in determining the date upon which an injured worker becomes permanently and totally disabled. Medical evidence and expert opinion are frequently conflicting, since estimates of permanent disability are often nothing more than that—estimates. As we recognized in *Griffith v. State Workmen's Compensation Comm'r,* 157 W.Va. 837, 843, 205 S.E.2d 157, 161 (1974), "[t]he rating of disabilities, regardless of legislative precision or medical expertise, remains an inexact science." *See Posey v. State Workmen's Compensation Comm'r,* 157 W.Va. 285, 290–92, 201 S.E.2d 102, 105–06 (1973); *Miles v. State Compensation Comm'r,* 136 W.Va. 183, 190–91, 67 S.E.2d 34, 38–39 (1951); Syllabus, *Stone v. Compensation Commissioner,* 106 W.Va. 572, 146 S.E. 372 (1929). The issue can be complicated where, as here, the original injury was not initially sufficiently severe to result in permanent total disability, but has subsequently progressed or become aggravated, resulting in several reopenings and additional PPD awards.

The second injury statute, which permits prior impairments to be considered in the permanent disability calculus, adds another dimension. In this area, further problems arise because physicians frequently evaluate only the second injury and ignore the residual disability from prior injuries. Moreover, medical reports often do not assess the individual's ability to work, which, under *Posey* and related cases, sets

---

14. While this quote is from the 2001 version of W. Va.Code § 23–4–18, the language quoted is identical to that found in the version of the statute in effect at the time the claimants involved in this appeal sustained their respective injuries. *See* W. Va.Code § 23–4–18 (1976) (Repl.Vol.1985).

15. The *Miracle* Court also discussed *Dunlap v. State Compensation Director,* 149 W.Va. 266, 140 S.E.2d 448 (1965), but concluded that the case was not helpful as it focused on whether a PTD award should be offset by any Temporary Total Disability benefits received.

the standard for permanent total disability. This type of evaluation is often left to experts in the field of vocational rehabilitation.

*Miracle,* 181 W.Va. at 446, 383 S.E.2d at 78 (footnote omitted). Acknowledging that "[t]he determination of the degree of disability is based on the reports of the various physicians and other experts who have examined the claimant," *Id.* (citing *Stewart v. State Workmen's Comp. Comm'r,* 155 W.Va. 633, 186 S.E.2d 700 (1972), and *McGeary v. State Comp. Dir.,* 148 W.Va. 436, 135 S.E.2d 345 (1964)), the Court held:

> A compensable injury which does not initially or of itself produce a permanent total disability may become progressively worse over time or combine with prior impairments under the second injury statute, W. Va.Code, 23–3–1, so as to result in a permanent total disability. In such circumstances, the "date of disability," from which a permanent total disability award will be calculated and paid within the meaning of W. Va.Code, 23–4–18, is the first date on which medical or other expert evidence indicated that such permanent total disability existed.

Syllabus, *Miracle.* The Court noted that this holding "is consistent with the conclusions of other jurisdictions where there is no specific language in the workers' compensation statute setting the date for the award and payment of PTD benefits." *Id.,* 181 W.Va. at 446, 383 S.E.2d at 78.

■ On the same day that the *Miracle* opinion was handed down, the Court also rendered its decision in a similar case styled *Young v. Workers' Compensation Commissioner,* 181 W.Va. 440, 383 S.E.2d 72 (1989). The claimant in *Young* had sustained numerous injuries to his back and sought a second injury life award. Mr. Young was .granted the award, but he challenged the date his award was to become effective. Although numerous reports had been submitted on the issue of his total disability, it was determined that his PTD commenced on March 26, 1986, the date of a report by an orthopedist who had concluded that Mr. Young was permanently and totally disabled. The *Young* Court affirmed the Division's decision with respect to the onset of Mr. Young's disability, and held:

> Where there are multiple reports from various experts which establish that the claimant has currently reached permanent total disability status, the Workers' Compensation Commissioner has a reasonable discretion in selecting the beginning date for the award and payment of permanent total disability benefits. The selection should be based on the dates upon which the experts found the claimant to have been permanently and totally disabled.

Syl. pt. 2, *Young.*

Most recently, this Court addressed the issue of the onset date for a PTD award in *Wingrove v. Workers' Compensation Division,* 208 W.Va. 80, 538 S.E.2d 378 (2000), *overruled, in part, on other grounds by Martin v. Workers Comp. Div.,* 210 W.Va. 270, 557 S.E.2d 324 (2001). In *Wingrove,* the claimant suffered an injury that got progressively worse over time. 208 W.Va. at 86, 538 S.E.2d at 384. He was initially awarded PTD by the Division with an onset date of February 13, 1987, the last date he worked.[16] *Id.* at 83, 538 S.E.2d at 381. The employer protested and the Workers' Compensation Office of Judges modified the ruling by changing the onset date to October 16, 1992, the date of a medical report concluding that the claimant was permanently and totally disabled. *Id.* The Workers' Compensation Appeal Board subsequently reversed the PTD award, concluding that Mr. Wingrove had been fully compensated by a ten percent PPD award he had received. *Id.* Before this Court, the claimant sought reinstatement of his PTD award and a determination that his disability commenced on February 13, 1987. *Id.* Applying *Miracle* and *Young,* we concluded that the proper onset date for the claimant's PTD was October 16, 1992. In reaching this conclusion, we explained that, "although there were findings that the claimant was permanently and totally disabled as

16. Mr. Wingrove had also been granted Social Security Disability benefits. The Social Security Administration had likewise determined that his total disability began on February 13, 1987. *See Wingrove v. Workers' Comp. Div.,* 208 W.Va. 80, 83, 538 S.E.2d 378, 381 (2000).

early as 1987, only one expert considered all of the claimant's potential in determining that [he] was permanently and totally disabled. Dr. J.P. Griffith, Jr., who evaluated the claimant on October 16, 1992 . . . ." *Id.* at 86, 72, 538 S.E.2d at 384.

In the instant case, we have considered the parties arguments and the case law discussed above, and we are persuaded that our prior holdings in *Miracle* and *Young* should be revisited and further refined. As we acknowledged in *Miracle*, the task of determining the date upon which an injured worker has become permanently and totally disabled is a difficult endeavor. Unless an injury is so severe as to obviously render a worker permanently and totally disabled at the time it is sustained, there rarely is a precisely discernable moment in time at which permanent disability arises. There may even be circumstances in which an injury, seemingly superficial at the outset, is later is found to have resulted in substantial or even total impairment. As we have said, " '[t]he rating of disabilities, regardless of legislative precision or medical expertise, remains an inexact science.' " *Miracle*, 181 W.Va. at 446, 383 S.E.2d at 78 (quoting *Griffith v. State Workmen's Comp. Comm'r*, 157 W.Va. 837, 843, 205 S.E.2d 157, 161 (1974)).

▮ In an effort to establish a fair and manageable solution to this problem, we have counseled that the onset of PTD should be ascertained from "the first date on which medical or other expert evidence indicated that such permanent total disability existed." Syl., *Miracle*. In practical application, this holding seems to have resulted in the Division searching medical, psychiatric, and vocational reports for a magical phrase stating "the claimant is permanently and totally disabled from future employment," or some similar express declaration, so that the date of that report, or the date of the underlying examination, may become the genesis of PTD benefits.[17] If the magical words have not been included, the content of the report appears to often be disregarded. This is particularly problematic where a claimant's disabilities span two or more specialities. PTD frequently arises from a combination of physical or of physical and psychiatric impairments. However, specialists may not be qualified to evaluate impairments outside their given specialty. For example, an orthopedic physician is not qualified to evaluate psychiatric impairment, and, conversely, a psychiatrist should not attempt to ascertain the level of impairment arising from physical injuries. Commonly, it is the functional capacity or vocational report that ultimately puts a claimant's various impairments together to ascertain the cumulative total thereof. Out of necessity, however, functional capacity and vocational evaluations may be performed only after a long series of medical and psychiatric examinations on behalf of all the interested parties. Thus, the date of that evaluation or report is often quite removed from the point of actual disability. While it may be necessary to obtain a vocational evaluation to rule out the possibility of rehabilitation prior to awarding PTD benefits, it does not seem appropriate to use the date of such a report to establish the onset of total disability when there is earlier reliable evidence supporting a finding of PTD.[18]

The solution to this dilemma, we believe, is to require deeper scrutiny on the part of the Division in finding PTD, and to expand the scope of the relevant evidence that may be

---

**17.** In *Miracle*, we accepted the date of the medical report as the date of PTD onset. However, there were only four days between the report and the examination it described. In accepting the date of the report as the onset of PTD, we specifically acknowledged that "the Commissioner chose the date of Dr. Fordham's report, which was January 20, 1987. While technically the more correct date would be January 16, 1987, the date of the examination, we do not consider this to be a significant difference." *Miracle*, 181 W.Va. at 446, 383 S.E.2d at 78. The claimant in

*Miracle* sought a ruling that his PTD had commenced approximately fourteen years earlier.

**18.** Having said this, we emphasize that evidence intended to establish PTD must be reliable evidence. Mere speculation by a professional that PTD arose at some earlier time will not suffice. Instead, a medical report specifying that PTD has arisen at some earlier time must include the specific details forming the basis for the opinion so that the Division has an adequate foundation upon which to consider the reliability of the report.

considered in deciding upon the associated onset date for the award. As one court has observed, "[t]he question of permanent total disability is an issue of fact and *all relevant evidence bearing upon the issue should be considered.*" *Revere Copper & Brass, Inc. v. Birdsong,* 267 Ark. 922, 926, 593 S.W.2d 54, 56 (1979) (emphasis added).

To this end, we specifically discourage complete reliance on buzzwords contained in medical evaluations. Instead, the Division should look at the record as a whole and give due consideration to the actual content of medical reports to determine whether they support a finding of PTD and may, thus, indicate the onset thereof. In examining the content of these reports, we believe certain factors should be considered as indicative of PTD status. For example, the absence of a medical release permitting the claimant to return to work, either from the time of his or her initial injury or from the time of some significant aspect of treatment such as surgery, signals that this person may indeed have been rendered "unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he or she has previously engaged with some regularity and over a substantial period of time." W. Va.Code § 23–4–6(n)(2) (1999) (Supp.2001).[19] Where such a release is present in the record, however, contemplation should be given to whether the release was contradicted, such as by evidence the claimant was unable to engage in substantial gainful activity, and the reliability of the evidence supporting the challenge. In addition, evidence that the claimant has experienced periods of temporary improvement following a debilitating injury or treatment may suggest that the claimant had not yet reached his or her maximum medical improvement and, thus, was not PTD during that period of time. Finally, we believe that testimony offered by a claimant should also be considered, so long as there is nothing in the record demonstrating that the claimant's testimony is unreliable. In ascertaining the reliability of a claimant's testimony, consideration may be given

to his or her cooperation, or lack thereof, during the evaluation process.

 Accordingly, we hold that the Workers' Compensation Division, in exercising its reasonable discretion, pursuant to *Young v. Workers' Compensation Commissioner,* 181 W.Va. 440, 383 S.E.2d 72 (1989), to select the "date of disability" from which a permanent total disability award will be calculated and paid within the meaning of W. Va.Code § 23–4–18 (2001) (Supp.2001), should scrutinize all the evidence included in the record and, in evaluating this evidence, should consider such factors as: (1) whether the claimant has ever been medically released to return to work; (2) whether such a release, if given, was contradicted; (3) whether there have been any periods of temporary improvement following a debilitating injury or treatment; and (4) reliable testimony offered by the claimant. In ascertaining the reliability of a claimant's testimony, consideration may be given to his or her cooperation, or lack thereof, during examinations performed to evaluate his or her level of impairment. To the extent our prior ruling in the Syllabus of *Miracle v. Workers' Compensation Commissioner,* 181 W.Va. 443, 383 S.E.2d 75 (1989), is inconsistent with this holding, it is hereby modified.

Additionally, we note that Mr. Payne has argued that a disability award from the Social Security Administration should be conclusive evidence of Workers' Compensation PTD. Citing *Cardwell v. State Workmen's Compensation Commissioner,* 171 W.Va. 700, 704 n. 3, 301 S.E.2d 790, 793 n. 3 (1983), Mr. Payne asserts that the Social Security Administration definition of disability is more restrictive than that of the Division and, therefore, a Social Security Disability award should be determinative in finding PTD for Workers' Compensation Purposes. We disagree.

First, the language relied upon by Mr. Payne is mere dicta. Furthermore, he has misinterpreted that language. While it may be true that the definition of disability ap-

---

**19.** This provision was also included in earlier versions of the workers' compensation statutes. *See* W. Va.Code § 23–4–6(n)(2) (1995) (Repl.Vol. 1998), W. Va.Code § 23–4–6(n) (1978) (Repl.Vol. 1985).

plied by the Social Security Administration is in some respects more restrictive than the definition utilized by this State's workers' compensation scheme, it must be remembered that these two programs are intended to serve slightly different purposes.[20] As the Division notes, *any* medical impairment may be considered for social security disability, while only work-related impairments may be considered in connection with a workers' compensation claim.[21] Moreover, in order to receive social security disability, one need only be impaired for a continuous period of twelve months.[22] Conversely, to qualify for a Workers' Compensation PTD award, one is expected to show a permanent impairment and associated inability to "engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he or she has previously engaged with some regularity and over a substantial period of time." W. Va.Code § 23–4–6(n)(2). Accordingly, while a social

security disability award may be persuasive evidence of the onset of PTD, we decline to find such evidence conclusory. We do recognize, however, that where work related medical conditions used to establish social security disability are substantially similar to those resulting in Workers' Compensation PTD, the social security disability award should be given considerable weight.

■ Based upon the foregoing analysis, we hold that the fact that a workers' compensation claimant has been awarded social security disability benefits is persuasive evidence that the claimant is permanently and totally disabled for workers' compensation purposes, and where social security disability is founded on work-related medical conditions that are substantially similar to those being asserted in connection with a workers' compensation claim for permanent total disability, the social security disability award should be given considerable weight.[23]

---

**20.** In *State ex rel. Boan v. Richardson*, 198 W.Va. 545, 552, 482 S.E.2d 162, 169 (1996), we observed that:

> With respect to social security disability and disability awards under workers' compensation, there is a like commonality of purpose. Eligibility for the two programs arises simultaneously and may often arise, at least in part, from the same cause of injury in the workplace. Both social security disability and workers' compensation contemplate payment for the involuntary interruption of work. *The requirement of eligibility for social security disability insurance, that a recipient be unable to engage in "substantial gainful activity" conceptually includes anyone permanently and totally disabled for workers' compensation purposes.*

(Footnote omitted) (Emphasis added). While eligibility for social security disability insurance conceptually includes anyone PTD for workers' compensation purposes, our discussion above demonstrates that the reverse is not necessarily true.

**21.** Pursuant to 42 U.S.C. § 423(d)(1) (1994 Ed.):

> (1) The term "disability" means—
> (A) inability to engage in any substantial gainful activity by reason of *any medically determinable physical or mental impairment* which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or
> (B) in the case of an individual who has attained the age of 55 and is blind . . ., inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity

in which he has previously engaged with some regularity and over a substantial period of time.

(Emphasis added).

**22.** See *supra* note 21.

**23.** We note that, as substantive law, the holdings herein announced should be afforded prospective application only. This Court has previously set forth the factors to be used in determining whether a holding should be afforded prospective or retroactive effect:

> "In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the

### B. Application to the Instant Cases

 While both of the instant claimants have been determined to be PTD, it is, nevertheless, necessary to consider the criteria for PTD in determining when their respective conditions reached that stage. Consequently, we pause briefly to identify the law applicable to their claims. In 1995, the provisions of the West Virginia Code related to Workers' Compensation were significantly amended by the West Virginia Legislature. As part of these amendments, the provisions related to the requisites for a PTD award were dramatically changed.[24] Subsequent to those modifications, we were asked to determine the appropriate law to be applied to determining the eligibility of a claimant to PTD benefits where the claimant's date of injury occurred prior to the enactment of the 1995 amendments, but where his or her application for PTD benefits was filed after the effective date of the amended statutes. *See State ex rel. ACF Indus., Inc. v. Vieweg,* 204 W.Va. 525, 514 S.E.2d 176 (1999). After thoroughly considering the issue, we concluded that

> [w]hen an employee, who has been injured in the course of and as a result of his/her employment, applies for workers' compensation benefits in the form of a permanent total disability (PTD) award, the employee's application for such compensation is governed by the statutory, regulatory, and common law as it existed on the date of the employee's injury or last exposure when there is no definite expression of legislative intent defining the law by which the employee's application should be governed.

Syl. pt. 8, *ACF Indus.* We further explained in syllabus point 9 of *ACF Industries* that "[t]he 'date of injury,' as it refers to an application for workers' compensation benefits arising from an occupational injury, is the date upon which the employee sustained the occupational injury which renders him/her eligible for the compensation award for which he/she has applied."

Accordingly, the proper law to be applied in these cases must be determined based upon the date each of the party claimants sustained his respective injury. Mr. Lambert was injured on October 21, 1981; Mr. Payne sustained his injury on September 20, 1983. Under the law in force at the time of these injuries,

> [a] claimant is permanently and totally disabled under our workmen's compensation statute when he is unable to perform any remunerative work in a field of work for which he is suited by experience or training. Each case will be considered on the peculiar facts for the reason that what may be totally disabling to one person would only be slightly disabling to another of a different background and experience.

Syl. pt. 3, *Posey v. State Workmen's Compensation Comm'r,* 157 W.Va. 285, 201 S.E.2d 102 (1973).[25] Having reviewed the appropriate law to be applied to the instant claims, we proceed to consider the arguments raised by the individual claimants.

 **1. Harvey Lambert.** Mr. Lambert argues that the onset date for his PTD award should be December 18, 1996, the date his leg was amputated. In support of his argu-

---

greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.". Syl. pt. 5, *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979). Based upon our consideration of these factors, we conclude the holdings of this case are applicable to any workers' compensation claim currently in the appeal process, so long as the issue of the onset date for a PTD award has been properly raised. Where the appeal period has expired without the issue of PTD onset being raised, this opinion will have no effect.

**24.** For a more detailed account of the specific changes and their underlying purpose, see *State ex rel. ACF Industries, Inc. v. Vieweg,* 204 W.Va. 525, 514 S.E.2d 176 (1999).

**25.** Under our current statute, a claimant must achieve a requisite level of PPD before applying for a PTD award. *See* W. Va.Code § 23–4–6(n)(1) (1999) (Supp.2001) (requiring forty percent in prior PPD awards, forty percent medical impairment resulting from an occupational disease or injury, or thirty-five percent statutory disability pursuant to the provisions of W. Va. Code § 23–4–6(f), to be eligible to apply for PTD).

ment, Mr. Lambert asserts that the vocational report used to establish the onset date of his PTD relied on medical reports dating back to his amputation. In addition, the vocational consultant testified that he observed no periods of temporary improvement following the amputation of Mr. Lambert's leg, and that there was no period subsequent to the amputation during which Mr. Lambert could have returned to full-time work. Our review of the record submitted on appeal supports Mr. Lambert's contention that he should be awarded PTD as of December 18, 1996, the date of his leg amputation. A review of the medical records following that amputation reveals that Mr. Lambert has consistently and continuously suffered from numerous debilitating complications associated with his left leg injury and subsequent amputation. The record is devoid of evidence indicating that Mr. Lambert was able "to perform any remunerative work in a field of work for which he is suited by experience or training" at any time after the amputation of his left leg. Following his amputation, he was apparently never medically released to resume employment, never did resume employment, and has never experienced a temporary period of improvement during which he could have reasonably and fairly resumed employment. Under these circumstances, we find that the Worker's Compensation Appeal Board was plainly wrong in affirming the onset date established by the Division. Accordingly, we reverse this case and remand it for entry of an order granting Mr. Lambert PTD benefits with an onset date of December 18, 1996.

■ **2. Billy Payne, Jr.** Mr. Payne seeks an onset date that coincides with the date he was awarded Social Security Disability benefits, November 19, 1996. In support of his proposed onset date, Mr. Payne argues that Dr. Orphanos, in his deposition testimony, opined that Mr. Payne's condition had not changed since the order granting social security disability. We are unpersuaded by Mr. Payne's arguments. Although his social security disability award should be given substantial weight, since the condition for which

he was granted the award is identical to that for which he has been granted workers' compensation PTD, the social security disability award in and of itself is not controlling. There is substantial evidence in the record indicating that Mr. Payne's failure to cooperate with the professionals attempting to evaluate his condition impaired their ability to ascertain his true level of impairment and his ability to return to a job for which he is suited. In its order granting PTD benefits to Mr. Payne, the Division expressly stated that it gave "[s]pecial attention" to the decision of the Social Security Administration granting him disability benefits. However, the record, when considered as a whole, does not clearly establish that Mr. Payne was PTD prior to April 5, 1999. Under these circumstances, we simply cannot conclude that the decision finding the onset date of Mr. Payne's PTD to be April 5, 1999, is plainly wrong. Consequently, this case is affirmed.

## IV.

## CONCLUSION

For the reasons stated in the body of this opinion, the April 30, 2001, order of the Workers' Compensation Appeal Board, finding the onset date for Mr. Lambert's PTD award was properly set at May 5, 1999, is reversed. Mr. Lambert's case is remanded for the entry of an order granting him PTD benefits with an onset date of December 18, 1996. In addition, we affirm the April 30, 2001, order of the Workers' Compensation Appeal Board affirming that the onset of Mr. Payne's PTD occurred on April 5, 1999.

Affirmed in part, Reversed in part, and remanded.

MAYNARD, Justice, concurring in part, and dissenting in part.

(Filed July 3, 2002)

I concur with the decisions in the instant cases. I believe that Mr. Lambert's PTD award should have an earlier onset date. However, I have serious concerns with re-

gard to the new law created by the majority in Syllabus Points 3 and 4.

First, I do not agree with new Syllabus. Point 4. Because of the substantial differences between social security disability benefits and workers' compensation awards, I believe that the fact that a workers' compensation claimant has been awarded social security disability benefits should not be accorded any greater weight than other evidence in PTD onset date cases.

Second, I would have found a way to award Mr. Lambert a PTD award as of the date of his below-the-knee amputation without revisiting and refining *Miracle* and *Young.* By providing that the beginning for a PTD award should be based on the date on which medical or other expert evidence indicated that a permanent total disability existed, the *Miracle/Young* rule inserted an element of certainty and supplied a much-needed benchmark in the selection of PTD onset dates. In contrast, the new rule articulated in Syllabus Point 3 of the majority opinion makes the selection of PTD onset dates a much more subjective and uncertain exercise.

Recently, I expressed my conviction that this Court regularly disregards applicable standards of review in order to find for claimants in workers' compensation cases. *See Martin v. Workers' Compensation Div.,* 210 W.Va. 270, 557 S.E.2d 324 (2001) (Maynard, J., dissenting). I fear that the subjective nature of the new totality-of-the-evidence rule announced by the majority will allow that practice to continue.

In conclusion, I concur with the Court's resolution of the instant cases, but I dissent to the newly-formulated law. Accordingly, I concur in part, and dissent in part.